[No. A067179. First Dist., Div. Three. June 21, 1996.]

WAYNE BAUER et al., Plaintiffs and Appellants, v.
BRUCE BAUER et al., Defendants and Respondents.

COUNSEL

William H. Ahern and J. Bryan Rodriguez for Plaintiffs and Appellants.

Sidney J. Cohen for Defendants and Respondents.

OPINION

McGUINESS, J.*—Wayne and Kenneth Bauer appeal from a judgment following a nonjury trial in favor of Bruce Bauer and West Coast Vending Service, Inc. (West Coast), on Wayne and Kenneth's[1] complaint for corporate dissolution under Corporations Code section 1800.[2] Wayne and Kenneth contend the trial court erred in failing to apply the proper standards for determining whether they were entitled to relief under the applicable statute, and in not making certain requested findings of fact. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

West Coast, a California corporation, is engaged in the business of installing, operating and maintaining vending machines on its customers' premises. Kenneth and his wife originally founded West Coast. Later, Kenneth divided the corporation among his three sons, Bruce, Wayne, and David. Bruce became the owner of 66 percent of the outstanding stock of West Coast. David and Wayne each had 17 percent of the corporate shares. At some point, David transferred his 17 percent back to his father Kenneth

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]For ease of reference, in this opinion we refer to the parties by their first names. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

[2]Unless otherwise indicated, all further statutory references are to the Corporations Code.

as security for a loan. Food Tree Snack Bars, Inc. (Food Tree), is a separate California corporation. Bruce owns 50 percent of its outstanding shares, Wayne owns 30 percent, and David owns 20 percent. Historically, West Coast did not hold annual shareholder meetings and did not pay corporate dividends to its shareholders.

Bruce controlled West Coast's operations from the 1970's through approximately 1987, when he placed Wayne in charge of West Coast at Wayne's request. Wayne controlled West Coast during the fiscal years 1988 and 1989. During that period, the company suffered substantial losses. On April 19, 1990, at a duly noticed meeting of the West Coast shareholders, Bruce, Kenneth, and Robert Gold were elected corporate directors. Both Wayne and David attended the meeting, at which they chose to vote their shares for Kenneth rather than for themselves. Although no longer directors of West Coast, they remained officers and employees of the corporation. Bruce resumed operating control of West Coast; Wayne remained as vice-president, and received employee compensation from both West Coast and Food Tree.

Wayne later decided to leave his employment with West Coast and go into competition with it through a new company. To this end, he took steps to take over the operations of Food Tree and began to solicit customers from West Coast. Wayne used Food Tree to compensate himself, to fund the formation of his new company, and to obtain information for use in competing with West Coast. At a meeting of the board of directors of Food Tree on December 20, 1990, Wayne and David voted to remove Bruce and install Wayne as president of that corporation. After this date, Bruce received no further compensation from Food Tree.

At a meeting on December 24, 1990, the West Coast board of directors voted to terminate the employment of David and Wayne on the grounds that between April and December 24, 1990, they had disrupted West Coast's business, solicited its customers, and utilized its proprietary information for the purpose of going into competition with it. After their termination, Wayne and David formed a new company, called Heritage Vending and Food Service. They actively continued to solicit West Coast's customers. At the same time, Wayne and David retained their status as shareholders of West Coast, with full access to all its books and records and with the power to call a shareholders meeting at any time. They also continued to control and be compensated by Food Tree.

On May 17, 1991, Wayne, David, and Kenneth filed the present complaint for, among other things, involuntary dissolution of West Coast.[3] West Coast cross-complained for damages and injunctive relief. On December 9, 1992, Wayne, David, and Kenneth moved for summary adjudication on their first cause of action for involuntary dissolution under section 1800, subdivision (b)(4) and (5). The trial court denied the motion on the basis of the following triable issues of fact: (1) whether they had been deprived of the benefits of ownership of West Coast in view of their ownership and control of Food Tree; (2) whether they could still exercise their votes on the West Coast board of directors; (3) whether dissolution of West Coast might be part of their strategy "to appropriate corporate assets for their competing business"; and (4) whether any remedy short of the involuntary dissolution of West Coast could be fashioned.

At trial, Wayne and Kenneth contended that they were entitled to involuntary dissolution of West Coast on the grounds of Bruce's alleged fraud and mismanagement. In support of this contention, they presented evidence that Bruce had misused or misappropriated a corporate airplane, a house at Lake Tahoe, corporate automobiles, and corporate funds, and had never paid any dividends to the other shareholders.

At the conclusion of trial, the trial court issued a tentative decision concluding that Wayne and Kenneth had not proven by a preponderance of the evidence that they were entitled to dissolution of West Coast. The trial court specifically found that: (1) real and personal property acquired by West Coast after 1974 was used by Bruce "more or less as his own"; (2) Wayne and Kenneth "have not proven by a preponderance of the evidence that the corporate funds were so used secretly"; (3) Wayne and Kenneth knew about Bruce's use of the house at Lake Tahoe and the corporate airplanes and vehicles, and they also used these things themselves; (4) although West Coast never paid any corporate dividends, there was "no evidence" that Wayne and Kenneth ever objected to this; (5) there was "no proof" that Bruce ever denied Wayne and Kenneth access to any corporate books or records; (6) Wayne and Kenneth made no express complaints about Bruce's management of West Coast for more than 15 years; and (7) although several unresolved questions remained about possible mismanagement or malfeasance at West Coast, the evidence was insufficient to support involuntary dissolution of the corporation. The trial court also found against West Coast on its cross-complaint.

After the trial court issued its tentative decision, Wayne and Kenneth requested a formal statement of decision with specific findings on 21

---

[3]Although David was originally a plaintiff in this lawsuit, he withdrew from the litigation at the outset of trial and dismissed his causes of action against West Coast and Bruce, who in turn dismissed their cross-complaint against him. He is not an appellant here.

subjects. In general, these comprised the issues of the minority shareholders' "reasonable expectations" regarding continued employment and economic return on their shares of the corporation, and whether Bruce's actions constituted "persistent unfairness" or "abuse of authority" toward the minority shareholders under section 1800, subdivision (b)(4). Bruce and West Coast filed a counterproposal for the statement of decision. Among other things, they asked the trial court to find that Wayne and Kenneth had "acquiesced, waived, or abandoned any claims they had and acquiesced in all of the conduct for which they filed a Complaint in 1991," by discussing all of their claims with Bruce in 1985 and deciding to take no further action at that time.

The trial court's statement of decision essentially restated the tentative decision, with the addition of a finding that Wayne and Kenneth had "waived" their objections to Bruce's "[l]ong ago conduct" by failing to make an issue of it until late 1990. The trial court entered judgment in favor of Bruce and West Coast on Wayne and Kenneth's complaint, and against West Coast on all aspects of its cross-complaint except for a $42,609.89 claim from Food Tree. Wayne and Kenneth's motion to set aside the judgment was denied. This appeal followed.

### Involuntary Corporate Dissolution

Any shareholder or shareholders of a small, closely held corporation such as West Coast may petition under section 1800 for its involuntary dissolution. (§ 1800, subd. (a)(2); 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 42, p. 551.) The statute enumerates several grounds for involuntary dissolution. Under section 1800, subdivision (b)(4) (hereafter subdivision (b)(4)), a court may grant involuntary dissolution where "[t]hose in control of the corporation have been guilty of or have knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of authority or persistent unfairness toward any shareholders or its property is being misapplied or wasted by its directors or officers." Section 1800, subdivision (b)(5) (hereafter subdivision (b)(5)), provides for involuntary dissolution "[i]n the case of any corporation with 35 or fewer shareholders" where "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders."

In their original complaint in this action, Wayne and Kenneth sought the involuntary dissolution of West Coast solely on the basis of allegations that Bruce "is in control of said corporation and has been guilty of persistent and pervasive fraud, mismanagement, abuse of authority, and persistent unfairness toward shareholders and has misapplied or wasted the corporation's

property by diverting funds intended for the corporation and keeping the same for [his] own use . . . ." This allegation follows the language of subdivision (b)(4). Later, in their motion for summary adjudication, Wayne and Kenneth raised the additional argument that they were entitled to involuntary dissolution under subdivision (b)(5) on the grounds that it was "reasonably necessary" to protect the rights and interests of minority shareholders.[4] On appeal, they contend that the trial court failed to apply the proper standards for determining whether they were entitled to relief under either subdivision (b)(4) or (5), and that under the correct standards and the undisputed facts, they were entitled either to dissolution of West Coast or to some other result giving them an economic return on their shares in the ownership of that corporation. We separately consider these two alternative grounds for granting involuntary corporate dissolution.

### SUBDIVISION (b)(4)

Involuntary corporate dissolution under subdivision (b)(4) requires a showing that those in control of the corporation have been guilty of, or have knowingly countenanced, "persistent and pervasive fraud, mismanagement or abuse of authority or *persistent unfairness* toward any shareholders," or that the corporation's property "is being misapplied or wasted by its directors or officers." (Italics added.) Wayne and Kenneth assert that, absent a statutory definition of the term, "persistent unfairness" must be interpreted in terms of the minority shareholders' "reasonable expectations," and that Bruce's actions toward them violated their "reasonable expectations" and were therefore actionable under subdivision (b)(4).

We disagree. In enacting the two separate provisions of subdivision (b)(4) and (b)(5), the Legislature clearly distinguished between a cause of action for involuntary dissolution based on the controlling shareholders' misconduct, and one based specifically on protection of the rights, interests

---

[4] Bruce and West Coast assert that because Wayne and Kenneth did not specifically plead subdivision (b)(5) as a separate ground for involuntary corporate dissolution in their complaint, they are now barred from arguing that the trial court erred in not granting dissolution on that basis. We disagree. In opposing the motion for summary adjudication, Bruce and West Coast argued the substantive merits of Wayne and Kenneth's contentions under subdivision (b)(5), and did not object that they were barred from seeking dissolution on this ground because they had not alleged it in their original complaint. Bruce and West Coast again disputed the merits of dissolution under subdivision (b)(5) in their trial brief, without objecting that Wayne and Kenneth had not pled this ground in their complaint and were therefore barred from arguing it. In its statement of decision, the trial court included *both* subdivision (b)(4) and (b)(5) in its discussion of Wayne and Kenneth's arguments for dissolution. By their failure to raise this technical procedural issue in the trial court, Bruce and West Coast have waived the contention that Wayne and Kenneth are now barred from arguing for dissolution under subdivision (b)(5).

and expectations of complaining minority shareholders. In construing these subdivisions, we are not authorized to insert qualifying provisions not included in the statutory language and may not rewrite a statute to conform to an assumed intention that does not appear on its face. (*Buss* v. *J.O. Martin Co.* (1966) 241 Cal.App.2d 123, 132 [50 Cal.Rptr. 206].) Nothing in subdivision (b)(4) would make a cause of action for dissolution turn on the minority shareholders' "reasonable expectations." We conclude that Wayne and Kenneth's proposed interpretation of subdivision (b)(4) would render subdivision (b)(5) nugatory and superfluous. (*Stumpf* v. *C.E. Stumpf & Sons, Inc.* (1975) 47 Cal.App.3d 230, 233-234 [120 Cal.Rptr. 671].)

No California decisional authority supports Wayne and Kenneth's contention. The leading case interpreting subdivision (b)(4)'s predecessor statute confirms that this particular cause of action for corporate dissolution is aimed at the misconduct of the controlling shareholders, not the "reasonable expectations" of the minority shareholders. (*Buss* v. *J.O. Martin Co.*, supra, 241 Cal.App.2d at pp. 134-137.) Although no reported California case has specifically defined the concept of "persistent unfairness," the appellate court in *Buss* made it clear that we must interpret the term in the context of the statute's general focus on the dominant stockholder's "persistent mismanagement."[5] The court upheld a trial court's finding of "persistent abuse of authority" and "persistent unfairness toward minority stockholders" on the basis of factual circumstances in which the controlling shareholder lost most of the corporation's business goodwill and market position previously accumulated over the years, alienated customers, discharged or lost the corporation's competent employees, failed to hire competent employees to carry on the business, deprived minority shareholders of access to corporate books and records, used corporate funds to pay himself excessive salaries, and generally managed and directed the corporation "as his private affair," to the actual financial loss and detriment of minority shareholders. (*Id.* at p. 135.)

Here, unlike in *Buss,* the trial court found that Wayne and Kenneth had not demonstrated any misconduct by the dominant shareholder, Bruce, against them. In fact, the circumstances in this case are substantially the opposite of those described in *Buss.* It was actually Wayne, a minority stockholder, whose mismanagement of the corporation caused it to suffer serious financial losses. The evidence showed that as long as Bruce controlled West Coast's operations, it performed relatively well. There was no evidence that

---

[5]The *Buss* court defined "persistent mismanagement" as consistently incompetent or unskillful conduct of the business of the corporation over a relatively long period of time, with a tenacious or persistent disregard of opposition or previous failure. (*Buss* v. *J.O. Martin Co.*, supra, 241 Cal.App.2d 123 at p. 134.)

Bruce ever paid himself excessive compensation; he received no dividends on his shares of the corporation, just as Wayne and Kenneth did not. Bruce never barred Wayne and Kenneth from membership on the board of directors or denied them access to corporate books or records.

Wayne and Kenneth nevertheless argue that they have established "persistent unfairness" by demonstrating that they were "squeezed out" when Bruce and West Coast excluded them from participating in the conduct of West Coast and denied them any economic benefits from their ownership interests in the corporation. It is true that some of the typical indicia of corporate "squeeze out," such as failure to pay dividends on corporate stock and termination of employment, may be present in this case. Nevertheless, enough important differences exist to defeat Wayne and Kenneth's analogy.

Thus, the evidence shows that dividends were *never* paid on West Coast stock, either to Wayne and Kenneth or to Bruce himself, and that Wayne and Kenneth never objected to this practice. Wayne chose not to remain on the West Coast board of directors. Wayne was fired from his job with West Coast, but only after he terminated Bruce's employment with and compensation from Food Tree. Wayne continued to be employed and compensated by Food Tree. Most importantly, the evidence showed that Bruce had a legitimate motive for terminating Wayne's employment with West Coast, based on the undisputed evidence that Wayne was stealing West Coast's customers, trade secrets, and corporate goodwill, while maneuvering to create a new company that would compete with West Coast. In short, Bruce's actions had the legitimate purpose of protecting West Coast from Wayne's attempts to take away its business. Seen in this light, Bruce's failure to terminate Wayne's employment at West Coast could have been construed as a violation of his fiduciary duty to the corporation.

For all these reasons, substantial evidence supported the trial court's refusal to find that Wayne and Kenneth had been improperly "squeezed out" of West Coast and were thereby entitled to involuntary dissolution of the corporation on this ground.[6]

---

[6]This analysis is supported by a leading treatise on California Corporation Law, as follows: "The term 'squeeze-out' is not capable of very precise definition . . . . It is generally intended to describe a situation where the majority controlling shareholders, who are also the principal officers of a corporation, engage in a course of conduct which is designed to exclude a minority shareholder or shareholders both from participation in the conduct of the corporate business and from the economic benefits derived therefrom . . . . The conduct most typically takes the form of refusing to pay any dividends on the corporate stock, refusing to permit the minority shareholder to have any corporate office or position on the board of directors . . . ,

## SUBDIVISION (b)(5)

██ The grounds for involuntary corporate dissolution under subdivision (b)(5) are considerably broader than those in subdivision (b)(4). Subdivision (b)(5) permits involuntary liquidation of a corporation whenever *"reasonably necessary* for the protection of the rights or interests of the complaining shareholder or shareholders." (Italics added.) Because the grounds for this cause of action are relatively more liberal than those set out in the other provisions of section 1800, subdivision (b)(5) applies only to corporations with 35 or fewer shareholders. (See Assem. Legis. Com. com., 23E West's Ann. Corp. Code (1990 ed.) § 1800, p. 481.) ██ Wayne and Kenneth argue that this broad standard required the trial court simply to determine whether they required protection as minority shareholders, without considering the relative misconduct of any party. On this analysis, Wayne and Kenneth contend that involuntary corporate dissolution was reasonably necessary to protect their interests, once the court found that Wayne had been terminated from his employment at West Coast and received no dividends or other remuneration from the corporation.

Again, we disagree. *Stumpf* v. *C.E. Stumpf & Sons, Inc., supra,* 47 Cal.App.3d 230, first examined the limits of this relatively liberal provision, which requires no finding of shareholder deadlock, corporate mismanagement, or persistent unfairness toward the minority shareholders, and empowers the courts to order involuntary corporate dissolution "when required to assure fairness to minority shareholders . . . ." (*Id.* at p. 234.) The *Stumpf* court observed: "[T]he danger of minority abuse was . . . recognized and dealt with by the Legislature. The procedure created by the statute does *not* authorize dissolution at will. The minority must persuade the court that

---

and the payment of large salaries to the controlling shareholders who are the principal officers of the corporation.

". . . . . . . . . . . . . . . . . . . . .

"Obviously, it makes a great deal of difference whether dividends had at one time been paid on a regular basis, but were stopped; whether the minority shareholder had a job with the corporation, from which he was fired; and whether the controlling majority shareholders increased their own officers' salaries, after the rift appeared and the dividends were terminated. In the final analysis, however, a determination of whether the conduct of the majority shareholders-officers was a breach of their fiduciary duty will turn upon a finding with respect to their *motivation,* as in connection with actions to defend the control of the management . . . .

"Motivation is difficult to establish, and *the courts are reluctant to interfere with a determination of the board of directors which is plausibly defended as being taken for a legitimate corporate purpose.* If the finding of fact is that the board made its decisions for a *proper corporate purpose,* and not from the alleged motivation of 'squeezing out' the minority shareholder, then there is no violation of their fiduciary duty, and the minority shareholder is *generally remediless.*" (2 Marsh's California Corporation Law (3d ed. 1995) § 11.46, pp. 958-960, italics added, fn. omitted.)

fairness requires *drastic relief* under [subdivision (b)(5)]; involuntary dissolution is not an automatic remedy but, rather, a *matter for the court's discretion.* '[A] minority stockholder suing under a statute, just as if he were suing in the absence of statute, must still convince the court that his application is meritorious. . . .' " (*Stumpf* v. *C.E. Stumpf & Sons, Inc., supra,* 47 Cal.App.3d at p. 235, italics added.)

In reviewing the trial court's denial of relief under subdivision (b)(5) in this case, therefore, we apply an abuse of discretion standard. ▓ Where a trial court has discretionary power to decide an issue, as here, we are not authorized to substitute our judgment of the proper decision for that of the trial judge. The trial court's exercise of its discretion will not be disturbed on appeal in the absence of a showing of palpable abuse amounting to a manifest miscarriage of justice. (*Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 650-651, fn. 7 [190 Cal.Rptr. 355, 660 P.2d 813]; *San Bernardino City Unified School Dist.* v. *Superior Court* (1987) 190 Cal.App.3d 233, 241 [235 Cal.Rptr. 356]; *Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 275, p. 286.) In other words, an appellate court will find an abuse of discretion only if the trial court's decision exceeds the bounds of reason, all of the circumstances being considered. (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].)

▓ Applying this standard to the facts of this case, we find no abuse of discretion. Wayne and Kenneth could not have had a reasonable expectation of lifetime employment by West Coast in view of the substantial evidence that they were engaged in setting up a competing company and soliciting West Coast's customers and business for themselves. Under such circumstances, the trial court did not abuse its discretion in concluding that the drastic relief of involuntary liquidation was not "reasonably necessary" to protect Wayne and Kenneth's rights or interests. It would be tantamount to sanctioning abuse to permit minority shareholders acting in bad faith to use subdivision (b)(5) as a coercive tool to force an involuntary dissolution. (*Stumpf* v. *C.E. Stumpf & Sons, Inc., supra,* 47 Cal.App.3d at p. 235; cf. *Matter of Kemp & Beatley, Inc.* (1984) 64 N.Y.2d 63 [484 N.Y.S.2d 799, 805-806, 473 N.E.2d 1173, 1179-1180].)

Other facts aside from Wayne and Kenneth's bad faith also defeat their claim for relief under subdivision (b)(5). It is undisputed that neither they nor Bruce *ever* received any corporate dividends, and that they never objected to this. The record contains substantial evidence that during the period at issue, West Coast had no corporate profits from which it could pay dividends in any event. Thus, the issue of nonpayment of corporate dividends is factually moot, and provides no basis for granting involuntary dissolution.

With regard to the issue of Wayne's termination from his employment at West Coast, even after the firing he still received compensation from Food Tree. The fact that Wayne and Kenneth had no actual expectations of receiving dividends or continued earnings from West Coast is demonstrated by Wayne's admission that he intended to leave his employment with West Coast in any event, and by the overwhelming evidence that Wayne and Kenneth had already purposely provided alternative sources of income and economic benefits for themselves before Wayne's firing. Significantly, just before he was fired from West Coast, Wayne ousted Bruce from Food Tree, thereby excluding him from that source of employment and compensation. On these facts, the trial court did not abuse its discretion in determining that involuntary dissolution and liquidation of the corporation was not "reasonably necessary" to protect Wayne and Kenneth's rights and interests.

## FAILURE TO MAKE REQUESTED FINDINGS OF FACT

Finally, there is no merit to Wayne and Kenneth's contention that we must reverse the judgment because the trial court failed to make their requested factual and legal findings. The trial court's statement of decision addressed the substance of all of the matters raised by Wayne and Kenneth's request for specific findings. ■ The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case. (Code Civ. Proc., §§ 632, 634; *Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 410 [55 Cal.Rptr. 1, 420 P.2d 713]; *McClung* v. *Saito* (1970) 4 Cal.App.3d 143, 152 [84 Cal.Rptr. 44].)

The judgment is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.