[No. B135396. Second Dist., Div. Four. Sept. 28, 2000.]

ANN STUPARICH et al., Plaintiffs and Appellants, v.
HARBOR FURNITURE MANUFACTURING, INC., Defendant and
Respondent.

COUNSEL

John Thomas Dzialo for Plaintiffs and Appellants.

William L. Schanz Law Corporation and William L. Schanz for Defendant and Respondent.

OPINION

EPSTEIN, J.—This is a dispute concerning a closely held family corporation. Plaintiffs and appellants, Ann Stuparich and Candi Tuttleton, appeal from judgment entered in favor of the corporation after the trial court granted summary judgment against them. The sole issue on appeal is whether plaintiffs raised a triable issue of material fact regarding their claim that dissolution was appropriate under Corporations Code section 1800, subdivision (b)(5) (section 1800 (b)(5)). (Further statutory references are to this code except where another is identified.) That statute provides for the involuntary dissolution of a corporation where "[i]n the case of any corporation with 35 or fewer shareholders . . . liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders."

We conclude that plaintiffs did not raise a triable issue of material fact that dissolution of the corporation was reasonably necessary to protect their rights and interests, and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

Plaintiffs are sisters. Harbor Furniture Manufacturing, Inc., was founded by their grandfather in 1929 as a furniture manufacturing business. A short time later, ownership of the company was divided between the grandfather and his wife[1] (50 percent) and their son, Malcolm Tuttleton, Sr., and his wife, Ilo Tuttleton (50 percent). In 1946, Harbor Furniture purchased land in Los Angeles County as an investment. Harbor Furniture was incorporated in 1957. In 1965, the Los Angeles County land was developed into a mobile-home park named The Californian, which continues to be owned and operated by Harbor Furniture. The corporation also continues to manufacture furniture.

---

[1]The names of the grandfather and grandmother are not in the record.

It is undisputed that Malcolm, Jr.[2] worked with his father, Malcolm, Sr., in the day-to-day operation of Harbor Furniture beginning in 1961. Malcolm, Jr. is plaintiffs' brother. In 1982, Malcolm, Sr. turned over the position of chief executive officer to Malcolm, Jr. Malcolm, Jr. received an annual salary of $153,000 plus bonuses. His wife, Jocelle, is employed by Harbor Furniture as an office manager and she also oversees production; her annual salary is $49,000. Malcolm, Jr.'s son, Brent, is employed by Harbor Furniture as a salesman. He receives a guaranteed annual salary of $27,000 plus commissions. Other than by attendance at board meetings, neither plaintiff has been involved in the operation of the company.

Plaintiffs obtained shares in Harbor Furniture through gifts and inheritance. When they filed the dissolution proceeding on December 17, 1996, they each held 19.05 percent of voting shares and 33.33 percent of nonvoting shares in the corporation. In March 1996, their father, Malcolm, Sr., sold his voting stock to his son, Malcolm, Jr. This transaction gave Malcolm, Jr. 51.56 percent of the voting shares and 33.33 percent of the nonvoting shares. (Plaintiffs characterize this transaction as "clandestine" and assert that they first learned of it through discovery conducted in this action.) The remaining 10.34 percent of shares are held by unidentified others. It is undisputed that the total number of shareholders is less than 35.

Plaintiffs became dissatisfied with the failure of the company to observe various formalities. At Ann Stuparich's insistence, the corporation began holding annual meetings in 1990. She served as chairman of the board of directors between 1990 and 1996. Both plaintiffs were on the board of directors for that period. The other members of the board included Malcolm Jr., and Malcolm Sr., and his wife, Ilo. Candi Tuttleton became secretary of the board of directors in 1993. Malcolm, Sr. was president and Malcolm, Jr. was vice-president.

Confusion and a dispute arose in late 1995 when the company's certified public accountant, John Rohm, circulated a proposal regarding disposition of Ilo Tuttleton's stock following her death. Plaintiffs believed that they had acquired a controlling share of the stock in the corporation. They proposed formally separating the mobilehome park operation from the furniture manufacturing operation by creating separate divisions. This was because the furniture business was incurring financial losses each year while the mobilehome park was very profitable. Ann Stuparich intended to insulate the profits of the mobilehome park from the furniture losses through this reorganization. Candi Tuttleton concurred in her sister's proposal.

---

[2]We sometimes refer to the parties by their first names for ease of reference. (See *Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1109, fn. 1 [54 Cal.Rptr.2d 377].)

According to Ann Stuparich's declaration, "Shortly thereafter, I was notified by John Rohm that his initial communication had been in error. The stock redemption had not given voting control to my sister and I. At approximately the same time I was notified by my brother [Malcolm, Jr.] that my meeting notice was defective and that no meeting would be held to discuss my restructuring proposal. When I was unable to obtain a satisfactory explanation as to how the voting/non-voting redemption discrepancy had arisen, I threw up my hands in frustration."

Plaintiffs' separate statement of disputed facts, which is supported by their declarations, states: "Although given titles of authority, Plaintiffs never had any real power or role in the corporation. Plaintiffs in 1996 realized that their efforts were futile; and that there never would be meaningful discussion of subjects of concern to them. Rather than continue efforts in frustration and futility, Plaintiffs stopped attending annual meetings." Malcolm, Jr. refused plaintiffs' request to buy out their shares.

It is undisputed that plaintiffs received monthly dividends from corporate profits from 1984 to 1996. The dividend payments tripled during this period from $1,000 per month to $3,000 per month. With additional quarterly payments, each plaintiff has received more than $800,000 in dividends since 1984. Harbor Furniture has distributed in excess of $2,700,000 in dividends to its shareholders since 1984, although the furniture portion of the business suffered losses of $2,577,682 in the fiscal years from 1990 through 1998.

Plaintiffs filed a verified complaint against Harbor Furniture Manufacturing, Inc., Malcolm, Jr., Malcolm, Sr., Malcolm, Jr.'s wife, Jocelle, and son, Brent. They sought involuntary dissolution of the corporation under section 1800, subdivision (b)(4) and (5); declaratory relief; and damages for fraud, conspiracy and negligence. The individual defendants and all causes of action other than that for dissolution under section 1800 (b)(5) subsequently were dismissed by stipulation of the parties. After the action was filed, there was a serious argument between Candi Tuttleton and Malcolm, Jr., which resulted in physical injuries to Ms. Tuttleton.

Harbor Manufacturing moved for summary judgment. It argued that dissolution is a drastic remedy which was inappropriate because the only factual basis for the action was plaintiffs' desire to no longer be involved with the corporation. Plaintiffs opposed the motion, arguing: "Dissolution is necessary because the relationship between the sisters . . . and their brother, MALCOLM TUTTLETON, JR., has deteriorated to the point of violence. The rancor and animosity between the sisters and their brother has made it

impossible for them to work together in any fashion, either as a family or as a corporate entity. [¶] That animosity is further aggravated and dissolution is further necessitated by the fact that the sisters and the brother have diametrically opposed interests. The corporation operates two businesses, one of which is a furniture manufacturing concern that perennially operates at a significant loss. Since the brother and his wife and son draw salaries and other compensation well exceeding $200,000 per year from that money losing operation, MALCOLM TUTTLETON, JR. has a vested interest in continuing its operation. [¶] The Plaintiffs, however, drawing no salaries from the money losing business, obtain no benefit from that enterprise. They have asked to be bought out, but the brother has refused." Plaintiffs pointed out that while their brother has the majority of voting shares, they own the majority of nonvoting shares.

The trial court granted the motion for summary judgment. In its minute order, the court found: "Plaintiff [*sic*] seek involuntary dissolution on the ground that the animosity between they and their brother makes it impossible to participate in corporate activities. However, as the moving papers indicate, plaintiffs could pursue a representative on the board of directors to represent their interests in the corporation. Further, plaintiff's [*sic*] rights are not in need of protection as they have consistently received the dividends owed them as shareholders." The court found that plaintiffs had not raised a triable issue of material fact "as to whether liquidation is reasonably necessary to protect plaintiffs' rights and interests." Judgment in favor of Harbor Furniture was entered and plaintiffs filed a timely notice of appeal.

### DISCUSSION

" 'Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no material issue of fact to be tried. (Code Civ. Proc., § 437c . . . .) The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. [Citation.] [¶] Appellate review of summary judgment is limited to the facts contained in the documents presented to the trial court. This court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. [Citations.]' . . . ." (*Aloha Pacific, Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297, 307 [93 Cal.Rptr.2d 148].) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. [Citation.]" (*Kelly v. First Astri Corp.* (1999) 72 Cal.App.4th 462, 470 [84 Cal.Rptr.2d 810].)

■ The sole issue in this appeal is whether plaintiffs raised a triable issue of material fact as to their right to involuntary dissolution of the corporation under section 1800 (b)(5), which applies where "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders." The Legislative Committee comment to section 1800 notes that the enacting legislation was intended to expand the authority to initiate an involuntary dissolution in specified situations. (Assem. Legis. Com. com., reprinted at 23E West's Ann. Corp. Code (1990 ed.) foll. § 1800, p. 481 (Legislative Committee comment).) The Legislative Committee comment specifically addresses involuntary dissolution in a close corporation: "The new law specifically authorizes the formation of 'close corporations' and the agreements necessary to 'close' the corporation. To provide close corporation shareholders with a remedy, this section permits any shareholder of a close corporation to initiate involuntary dissolution. . . . [¶] Since this section permits a going concern to be involuntarily terminated, the application of such a drastic remedy should be appropriately limited. Subdivision (b)(5) of this section states a relatively broad ground for involuntary dissolution proceedings and, in light of the expansion of authority to bring such an action, this provision is limited to corporations with 35 or fewer shareholders." (*Ibid.*)

There are two cases addressing the right of minority shareholders to force dissolution of a corporation because their interests and rights cannot be protected. The first, *Stumpf v. C.E. Stumpf & Sons, Inc.* (1975) 47 Cal.App.3d 230 [120 Cal.Rptr. 671], was decided under former section 4651, the predecessor to section 1800. Former section 4651, subdivision (f) allowed involuntary dissolution where "[t]he liquidation is reasonably necessary for the protection of the rights or interests of any substantial number of the shareholders, or of the complaining shareholders." (47 Cal.App.3d at p. 233, fn. 2.) The corporation in *Stumpf* was wholly owned in equal shares by C.G. Stumpf, Sr., and his two sons. One of the sons, Donald Stumpf, left employment with the corporation after a managerial dispute. He was removed as an officer of the corporation. He did not seek to participate in the family business after that, and was not asked to do so. The trial court granted his request for involuntary dissolution of the corporation. On appeal, the corporation argued that dissolution was inappropriate absent some finding of deadlock, mismanagement, or unfairness toward Donald. Deadlock and mismanagement were other grounds for dissolution set out in former section 4651. The trial court specifically found there had been no mismanagement or unfairness and there was no evidence of a corporate deadlock.

The *Stumpf* court affirmed the order of dissolution. It concluded that subdivision (f) of section 4651 was not limited to situations of the kind

specified in the other subdivisions of the section. (*Stumpf v. C. E. Stumpf & Sons, Inc., supra,* 47 Cal.App.3d at p. 234.) It read former section 4658, which allowed a majority to preserve the corporation by buying out the minority, with former section 4651, as demonstrating a legislative intent "to empower the courts to order dissolution when required to assure fairness to minority shareholders and at the same time to lessen the danger of minority abuse." (47 Cal.App.3d at p. 234.) The court rejected an argument by a text writer "that a broad construction of the statute 'make[s] it too easy for an obstreperous minority to interfere with the legitimate control and management of the majority by creating a cash nuisance value.' (Ballantine and Sterling, Cal. Corporation Laws (1938 ed.) § 318, at p. 308.)" (*Id.* at p. 235.)

The *Stumpf* court concluded that the power of minority shareholders to obtain involuntary dissolution was not unlimited: "[T]he danger of minority abuse was evidently recognized and dealt with by the Legislature. The procedure created by the statute does not authorize dissolution at will. The minority must persuade the court that fairness requires drastic relief under section 4651, subdivision (f); involuntary dissolution is not an automatic remedy but, rather, a matter for the court's discretion. '[A] minority stockholder suing under a statute, just as if he were suing in the absence of statute, must still convince the court that his application is meritorious. If the objection were that, because of the possibility of abuse, minority stockholders should not be permitted to ask a court to wind up a corporation, however meritorious the case, the solution would seem to lie in total abolition of the remedy. The reluctance to authorize winding-up a corporation even where such action would be just and equitable contrasts strangely with the arbitrary manner in which a ministerial state official terminates, at a stroke, the existence of great numbers of corporations for failure to comply with comparatively unimportant formalities, such as filing reports or paying a nominal annual tax.' [Citation.] Further, as we have seen, the threat of minority abuse of subdivision (f) is reduced by the existence of Corporations Code section 4658 (discussed, *ante*; see Israels[, *The Sacred Cow of Corporate Existence Problems of Deadlock and Dissolution* (1952) 19 U. Chi. L.Rev.] at p. 791." (*Stumpf v. C.E. Stumpf & Sons, Inc., supra,* 47 Cal.App.3d at p. 235.) The Court of Appeal concluded that the trial court is to exercise its discretion in ruling on dissolution of a corporation under former section 4651, subdivision (f). (47 Cal.App.3d at p. 235.)

Based on evidence of the extreme hostility between the two brothers— which had forced Donald Stumpf to sever contact with the family and had shown that Donald had no say in the operation of the business and that he received no salary, dividends, or other revenue from his investment in the

corporation after he withdrew from the business—the court concluded that the trial court's judgment granting dissolution was supported by substantial evidence. It found no abuse of discretion. (*Stumpf v. C. E. Stumpf & Sons, Inc., supra*, 47 Cal.App.3d at p. 235.)

The second case is *Bauer v. Bauer, supra*, 46 Cal.App.4th 1106. In that case, minority shareholders of West Coast, a closely held corporation, sought involuntary dissolution. The minority shareholders went into business in direct competition with West Coast and had been ousted as employees of West Coast. Following trial, the court refused to grant dissolution. On appeal, the minority shareholders argued that dissolution was appropriate both under section 1800, subdivision (b)(4) (persistent fraud, mismanagement, abuse of authority or persistent unfairness toward shareholders) and subdivision (b)(5) (dissolution necessary to protect rights or interests of complaining shareholders).

The Court of Appeal held that in enacting subdivision (b)(4) and (5) of section 1800, "the Legislature clearly distinguished between a cause of action for involuntary dissolution based on the controlling shareholders' misconduct, and one based specifically on protection of the rights, interests and expectations of complaining minority shareholders." (*Bauer v. Bauer, supra*, 46 Cal.App.4th at pp. 1113-1114.) The *Bauer* court concluded that the grounds for dissolution under subdivision (b)(5) are considerably broader than those in subdivision (b)(4). (*Bauer*, 46 Cal.App.4th at p. 1116.) It cited *Stumpf v. C. E. Stumpf & Sons, supra*, 47 Cal.App.3d 230 for the limitations on involuntary dissolution to protect the interests of minority shareholders. (46 Cal.App.4th at pp. 1116-1117.)

The *Bauer* court applied an abuse of discretion standard. (*Bauer v. Bauer, supra*, 46 Cal.App.4th at p. 1117.) It concluded that in light of the bad faith conduct of the minority shareholders in setting up a competing business and soliciting West Coast's customers, the trial court did not abuse its discretion in concluding that the "drastic relief of involuntary liquidation" was not " 'reasonably necessary' " to protect the minority shareholders' interests. (*Ibid.*) The appellate court also found that nonpayment of corporate dividends was not a basis for granting dissolution because of evidence that there were no profits from which dividends could be paid. (*Ibid.*) Finally, it found that under the circumstances, the minority shareholders did not have a reasonable expectation of receiving either dividends or salaries from West Coast. It affirmed the trial court's judgment denying involuntary dissolution because involuntary dissolution was not " 'reasonably necessary' " to protect the minority shareholders' rights and interests. (*Id.* at pp. 1117-1118.)

With these decisions in mind, we turn to plaintiffs' arguments on appeal.

The issue is whether plaintiffs raised a triable issue of material fact as to whether dissolution is "reasonably necessary" to protect their rights or interests. Plaintiffs point to the following evidence, presented in opposition to the motion for summary judgment: (1) their brother, Malcolm, Jr., has voting control of the corporation; (2) plaintiffs are not allowed meaningful participation in the corporation; (3) the dispute with their brother gave rise to a violent confrontation between Malcolm, Jr. and Candi Tuttleton; and (4) plaintiffs have an economic interest in reducing or ending the significant losses the furniture manufacturing business has suffered over the last 10 years, but Malcolm, Jr. and his family draw benefits from the furniture operation in the form of salaries and bonuses.

First, it is undisputed that Malcolm, Jr., with 51.56 percent of the voting shares, can outvote plaintiffs on any issue. California law allows corporations to issue both voting and nonvoting stock. (§ 400, subd. (a).) A leading treatise on California corporation law explains the use of voting and nonvoting stock: "Perhaps the most traditional way of allocating control of a corporation is through issuance of both voting and nonvoting shares. . . . [¶] Traditionally, the new close corporation would issue voting shares to those shareholders who were to be 'active' participants in the business of the corporation and nonvoting shares to those shareholders who were to be merely inactive 'investors' in the corporation. This resulted in providing the inactive investors with equal opportunity to receive dividends and protection on dissolution of the corporation but preserved management control of the corporation to the 'active' participants in the business." (1 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1998) § 62.04, p. 4-64 (rel. 69-4/98), fn. omitted.)

It is also undisputed that Malcolm, Sr. turned over the operation of Harbor Furniture to Malcolm, Jr. and that plaintiffs have played no part in the daily operation of either the furniture manufacturing or mobilehome park operations of the corporation. In addition, while characterizing Malcolm, Sr.'s sale of his voting stock to his son as "clandestine," plaintiffs do not dispute his right to make the sale.

Thus, the distribution of voting shares in the corporation is consistent with California law, and does not, in itself, present a "reasonable" necessity for dissolution. The other issues briefed by plaintiffs are related. They cite their inability to play a meaningful role in the operation of the corporation, the

complete breakdown of their relationship with their brother, and the continuing losses incurred by the furniture manufacturing operation, which reduced profits. Plaintiffs rely on their declarations, in which they describe their efforts to participate in corporate operations or policy as frustrating and futile. As evidence of their treatment as "second class", shareholders, plaintiffs cite Malcolm, Jr.'s concealment of his acquisition of a controlling share of voting stock. As we have discussed, plaintiffs do not challenge Malcolm, Sr.'s right to sell these shares to his son. Plaintiffs contend that the sale was made at steeply discounted values, arguing "the entire secretive transaction is merely one more example of actions that disadvantage and disregard the sisters, who after all do in fact own the majority of all shares in the corporation." But Malcolm, Sr. was privileged to sell his shares to his son at whatever price he chose.

In essence, the corporation argues that as minority shareholders, plaintiffs' only right and interest is in continuing to receive dividends. It points to undisputed evidence that plaintiffs, as well as the other shareholders, were paid significant dividends in the period preceding the filing of the dissolution action. It invokes the business judgment rule of deference to corporate directors in making decisions regarding the operation of the company, citing *Lee v. Interinsurance Exchange* (1996) 50 Cal.App.4th 694 [57 Cal.Rptr.2d 798]. In response to plaintiffs' argument that the corporation would make more money if the furniture manufacturing operation were eliminated, Harbor Furniture argues that this does not raise a triable issue of material fact because it can always be argued that more profits could be made. It contends that courts should not be involved "in the tweaking of corporate performance. Such is the reason for the 'business judgment' rule." The corporation also suggests that plaintiffs elect someone other than themselves to represent their interests on the board of directors. It argues "An opportunity to participate and speak is all a minority shareholder is entitled to and may expect."

Here, there is no evidence of bad faith conduct by Malcolm, Jr. which rises to the level demonstrated in *Bauer v. Bauer, supra,* 46 Cal.App.4th 1106. While unfortunate, the situation presented is not unique to this close corporation. It is undisputed that plaintiffs hold a minority of voting stock, their brother holds the controlling share of voting stock, and the relationship between them has broken down and is hostile. Historically, Malcolm, Jr. has been instrumental in the operation of the corporation and plaintiffs have played no role in the day-to-day operations. Out of frustration, and perhaps out of fear, plaintiffs have chosen not to participate further in the meetings of the board of directors. While there is a dispute between the shareholders

as to the viability of the furniture manufacturing side of the corporation, the mobilehome park has continued to generate significant profits which have been paid out to the shareholders as dividends. Malcolm, Jr.'s declaration states: "Harbor Furniture's income and the profits it has distributed is composed of its furniture manufacturing activities and the investment return from the rental of mobile home units at the Californian. While the recent furniture business slump has reduced its furniture manufacturing success, that downward trend has ceased and the furniture business of Harbor Furniture is becoming more successful." Plaintiffs submit no evidence to dispute the assertion that the furniture manufacturing operation is doing better.

On this undisputed record, we cannot say that the trial court erred in finding as a matter of law, that the drastic remedy of liquidation is not reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders. (§ 1800 (b)(5).) As holders of a minority of the voting shares, plaintiffs are not entitled to substitute their business judgment for their brother's with respect to viability of the furniture operations. This case is distinguishable from *Stumpf v. C.E. Stumpf & Sons, supra,* 47 Cal.App.3d 230 in that plaintiffs continued to receive benefits from the corporation in the form of dividends until this litigation was instituted. While there was extreme family hostility in *Stumpf,* as there is here, in this case, plaintiffs removed themselves from participation in the board meetings.

Plaintiffs argue that the trial court and the court in *Bauer v. Bauer, supra,* 46 Cal.App.4th 1106 ignored the "safety valve" provisions of section 2000,[3] which allow a corporation or majority shareholder to avoid involuntary dissolution by buying out the minority shareholders. They point out that the court in *Stumpf v. C.E. Stumpf & Sons, supra,* 47 Cal.App.3d 230 considered this procedure in construing the meaning of the predecessor statute to section 1800 (b)(5). But this provision is not mandatory. There is nothing in the language of the statute, and plaintiffs have cited no authority, which requires either the board of directors or the majority shareholders to buy the shares of the minority to avoid dissolution.

---

[3]Section 2000, subdivision (a) provides in pertinent part: "[I]n any suit for involuntary dissolution, . . . the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding ('the moving parties') at their fair value."

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 13, 2000.