Filed 4/21/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TIMOTHY O'BRIEN, | B263364 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GC048333) |
| v. | |
| AMBS DIAGNOSTICS, LLC, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  C. Edward Simpson, Judge.  Reversed and remanded.

Woolf & Nachimson, Benjamin S. Nachimson, for Plaintiff and Respondent.

Miller, Monson, Peshel, Polacek & Hoshaw, Thomas M. Monson; Butterfield Schechter, Marc S. Schechter, Paul D. Woodard, for Defendant and Appellant.

\* \* \* \* \* \*

Is money that a person sets aside for the "qualified higher education expenses" of his children under Internal Revenue Code section 529 (so-called "section 529 savings accounts") exempt from the collection efforts under the California Enforcement of Judgments Law, Code of Civil Procedure section 680.010 et seq.,[1] of a creditor who has a valid judgment against that person? We conclude it is not. Accordingly, we reverse the trial court's ruling to the contrary, and also reverse its finding that the debtor's retirement accounts are fully exempt from collection because the court did not apply the proper legal standard in evaluating the exemption for private retirement accounts.

## FACTS AND PROCEDURAL BACKGROUND

Following a bench trial in 2014, AMBS Diagnostics, LLC (Diagnostics) obtained a judgment against Timothy O'Brien (O'Brien) in the amount of $622,957.21.[2]

A few months later, Diagnostics recorded an abstract of judgment and the trial court issued a writ of execution for that judgment. Diagnostics served a notice of levy upon FMR, LLC/Fidelity Investments, which managed at least seven of O'Brien's investment accounts.

O'Brien thereafter filed a Claim of Exemption seeking a judicial declaration that seven of his Fidelity Investments accounts were exempt from levy: (1) three section 529 savings accounts held in his name, then valued at $54,765.39, one for each of his three children; and (2) four individual retirement accounts held fully or partially in his name, then valued at $465,350.04. For all seven accounts, O'Brien invoked the exemption for "individual retirement . . . accounts" set forth in section 704.115. In support of his claim, O'Brien submitted evidence that he was 51 and his wife was 41, that he was caring for his three children and two members of his extended family, that his monthly income of

---

[1]  Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]  We affirmed this portion of the judgment in an unpublished opinion. (See *O'Brien v. AMBS Diagnostics, LLC* (Jan. 7, 2016, B260301).)

2

$8,841.30 was overshadowed by his monthly expenses of anywhere from $17,632 to $20,000-plus, and that he possessed no "other substantial assets to rely upon for . . . retirement." In prior depositions, O'Brien had indicated that his new company in 2014 was generating an average monthly income of $20,000 and that one of his extended relatives was contributing $1,000 per month toward the household's expenses; neither was reflected in O'Brien's exemption request.

Diagnostics objected. Following further briefing, the trial court held a hearing and thereafter granted O'Brien's claims for exemption for all of the section 529 savings accounts and for the full amount of all four retirement accounts. With respect to the section 529 savings accounts, the court noted the absence of any "statutory or case authority" as to whether section 529 savings accounts are exempt from levy, but reasoned that "the same public policy applies to both the private retirement plans and the 52[9] plans," further noting that "protecting monies held in trust for the education of one[']s children may even be a greater reason to exempt them from execution." With respect to the individual retirement accounts, the court stated its view during the hearing that it could not "weigh or take into consideration what [O'Brien's and his wife's] current wages and salaries are." In its subsequent, written order, the court concluded that exempting the full amount of the retirement accounts was necessary because O'Brien was "self employed" and, upon his retirement, "will have only the net after tax income from his private retirement plans and whatever social security income he and his wife might receive."

Diagnostics timely appealed this ruling.

**DISCUSSION**

Diagnostics argues that the trial court erred in (1) concluding that the section 529 savings accounts were exempt from levy, and (2) concluding that the full amount of O'Brien's four retirement accounts was "necessary to provide for" him and his family upon his retirement. The first question turns on a question of statutory construction, so our review is de novo. (*Lieberman v. Hawkins (In re Lieberman)* (9th Cir. 2001) 245 F.3d 1090, 1091 ["(t)he scope of an exemption under Cal. Civ. Proc. Code § 704.115 is a

3

question of law"].) The second is entrusted to a trial court's "wide discretion," so our review is for an abuse of discretion. (See *Spenler v. Siegel (In re Spenler)* (9th Cir. 1997) 212 B.R. 625, 631.)

## I. Whether Section 529 Savings Accounts Are Exempt From Levy Under California's Enforcement of Judgments Law

California's Enforcement of Judgments Law (Law), which is codified in sections 680.010 through 724.260, is a "'comprehensive and precisely detailed scheme' governing enforcement of money judgments" in California. (*Kono v. Meeker* (2011) 196 Cal.App.4th 81, 86 (*Kono*).) As a general rule, the Law authorizes a creditor holding a "money judgment" to "enforce" that judgment against "all property of the judgment debtor" through a "writ of execution." (§§ 695.010, subd. (a) & 699.710.) To effectuate the California Constitution's command that "a certain portion of the homestead and other property of all heads of families" be "protect[ed], by law, from forced sale" (Cal. Const., art. XX, § 1.5), our Legislature exempted certain items of property from levy by creditors with money judgments; those exemptions are set forth in sections 704.010 through 704.210. (*Kono*, at p. 86; *Ford Motor Credit Co. v. Waters* (2008) 166 Cal.App.4th Supp. 1, 8 (*Ford Motor Credit Co.*).) The debtor bears the burden of proving that his property fits within one or more of these exemptions. (§ 703.010, subd. (a); *Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626 (*Schwartzman*).)

Section 529 of the Internal Revenue Code creates a narrow exemption from federal income taxes for money that is earned as part of a "qualified tuition program." (26 U.S.C. § 529.) Under this exemption, an individual may contribute cash, after paying income taxes on it, into a 529 savings account; the individual may later withdraw money from that account—without having to pay any income tax on the account's earnings—if that money is used to pay the "qualified higher education expenses" of a relative. (§ 529, subds. (a), (b), (c)(1), (c)(3) & (e).) If the money is used for any other purpose, the individual has to pay the income taxes on any earnings *plus* a 10 percent penalty. (§§ 529, subd. (c)(6) & 530, subd. (d)(4).)

4

Do section 529 savings accounts fit within any of the Law's exemptions from levy? At first blush, the answer appears to be no because none of the Law's exemptions expressly refer to section 529 savings accounts or other moneys set aside for education. (See §§ 704.010-704.210.)

O'Brien offers three reasons why a section 529 savings account should nevertheless be immune from levy. First, O'Brien contends that we should look to federal bankruptcy law. Under that law, section 529 savings accounts are excluded from a debtor's estate and thus cannot be used to satisfy creditors' debts. (11 U.S.C. § 541, subd. (b)(6).) This is true, but it is also irrelevant. The protection accorded to a debtor's section 529 savings accounts in federal bankruptcy proceedings arises only after the debtor has initiated those proceedings by filing for bankruptcy. (See *In re Moses v. Southern California Permanente Med. Group* (9th Cir. 1999) 167 F.3d 470, 473 ["(t)he act of filing a petition under the Bankruptcy Code commences bankruptcy proceedings and creates an estate"]; 11 U.S.C. § 541, subd. (a) ["(t)he commencement of a [bankruptcy] case . . . creates an estate"].) O'Brien never filed for bankruptcy. Because the power of federal bankruptcy law to displace state law does not extend to state laws "concern[ing] conduct that occurred *prior to* bankruptcy" (*Davis v. Yageo Corp.* (9th Cir. 2007) 481 F.3d 661, 678; cf. *PG&E Co. v. Cal. ex rel. Cal. Dept. of Toxic Substances Control* (9th Cir. 2003) 350 F.3d 932, 943 [discussing preemptive power once federal bankruptcy jurisdiction has been invoked]), we decline to give controlling weight to the treatment of section 529 savings accounts under federal bankruptcy law when interpreting how our state's collections law operates prior to bankruptcy. O'Brien also cites the maxim that "[s]tate and federal laws should be accommodated and harmonized where possible" (*Cal. Arco Distributors v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349, 359; *Greater Westchester Homeowners Assn. v. Los Angeles* (1979) 26 Cal.3d 86, 93), but this maxim is a tool for "avoid[ing]" preemption (*Cal. Arco Distributors*, at p. 359), which, as noted above, is of no concern here.

Second, O'Brien asserts that the Law's exemption, in section 704.115, for "private retirement accounts" encompasses section 529 savings accounts. This exemption applies

5

to "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan." (§ 704.115, subd. (b).) It defines a "private retirement plan" as including, among other things and as relevant here, "[s]elf-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1986 . . . ." (*Id.*, subd. (a)(3).) To qualify as a "private retirement plan," however, the plan must also be "designed and used for retirement purposes." (*Schwartzman*, *supra*, 50 Cal.App.4th at p. 628; *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 14 ["the fundamental inquiry" under section 704.115 is "whether the plan was designed and used for a retirement purpose"].) As defined, section 529 savings accounts are designed and used for educational purposes, not retirement purposes; indeed, such accounts lose their tax exempt status and are subject to penalty if they are used for anything other than educational purposes.

Lastly, O'Brien contends—and the trial court agreed—that there are good policy reasons to exempt section 529 savings accounts from levy. The purpose of exempting certain property from levy is "to protect enough of the debtors' property from enforcement to enable them to support themselves *and their families*." (*Kono*, *supra*, 196 Cal.App.4th at p. 86, italics added; *Ford Motor Credit Co.*, *supra*, 166 Cal.App.4th Supp. at p. 8 [exemptions exist "for the protection of the debtor and the debtor's family"].) The money a debtor has set aside for his children's higher education would seem to fall comfortably within this rationale. Exempting section 529 savings accounts from levy prior to bankruptcy could also be viewed as more consistent with the policy underlying federal bankruptcy law; after all, if creditors can deplete those accounts by levying on them prior to bankruptcy, the protection accorded to them in a subsequent bankruptcy proceeding is too little, too late. Indeed, this may be why at least 27 states have exempted section 529 savings accounts from levy by creditors.[3] However, California is

___

[3]    (See Alaska Stat. § 14.40.802; Ark.C.A. § 6-84-110, subd. (b)(2); Colo. Rev. Stat. § 23-3.1-307.4; Fla. Stat. § 222.22; Idaho Code § 11-604A; Kan. Stat. Ann. § 60-2308,

not one of those states.  "Exemptions are the creatures of statutes" and "[n]o property is exempt unless made so by express provision of law."  (*In re Estate of Brown* (1889) 123 Cal. 399, 401.)  Because "exemptions cannot be enlarged by the courts" (*Vinyard v. Sisson* (1990) 223 Cal.App.3d 931, 938), we certainly cannot go one step further and create a brand new exception from whole cloth, no matter how persuasive the policy reasons that might support it.  We leave that task where our Constitution put it—with our Legislature.

For all these reasons, the trial court erred in exempting O'Brien's section 529 savings accounts from execution.

## II.    Whether the Trial Court Abused Its Discretion In Exempting the Full Amount of O'Brien's Retirement Accounts

As noted above, section 704.115 exempts "private retirement plans" from levy. (§ 704.115, subd. (b).)  However, this exemption is not an all-or-nothing affair; instead, it exempts these accounts "only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor."  (*Id.*, subd. (e); *Schwartzman*, *supra*, 50 Cal.App.4th at pp. 629-630 [so noting].)

In assessing what portion of a debtor's retirement account is "necessary" for the debtor's support, the statute directs a court to "tak[e] into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires."  (§ 704.115, subd. (e))  "In determining whether the amounts held in the accounts are necessary for [the] debtor's support when she retires, [a] court should

---

subds. (f)(2)-(f)(4); Ky. Rev. Stat. § 164A.350; La. Rev. Stat. § 17-3096G; Me. Rev. Stat. Ann., tit. 20-A, § 11478; Md. Edu. Code. Ann. § 18-1913; Neb. Rev. Stat. § 85-1809; Nev. Rev. Stat. § 21.090; N.J. Stat. § 18A:71B-41.1; N.Y. CLS CPLR § 5205; N.D. Admin. Code § 12.5-02-01-06; Ohio Rev. Code. Ann. § 3334.15, subd. (a); 31 Okl. Stat. § 1, A, 24; Ore. Rev. Stat. § 348.863, subd. (2); 24 Penn. Stat. § 6901.309.2; R.I. Gen. Laws § 9-26-4, subd. (15); S.C. Code Ann. § 59-2-140; S.D. Cod. Laws § 13-63-20; Tenn. Code Ann. § 49-7-822; Tex. Prop. Code § 42.0022; Va. Code Ann. § 23-38.81; W. Va. Code § 18-30-7, subd. (i); Wis. Stat. § 16.64.)

consider various factors, including [¶] [1] 'the debtor's present and anticipated living expenses and income; [2] the age and health of the debtor and his or her dependents; [3] the debtor's ability to work and earn a living; [4] the debtor's training, job skills and education; [5] the debtor's other assets and their liquidity; [6] the debtor's ability to save for retirement; and [7] any special needs of the debtor and his or her dependents.'" (*Gonzalez v. Davis (In re Davis)* (B.A.P. 9th Cir. 2005) 323 B.R. 732, 735-736, quoting *In re Moffat* (B.A.P. 9th Cir. 1990) 119 B.R. 201, 206, aff'd by 959 F.2d 740 (9th Cir. 1992).) The goal, in examining these factors, is to assess the "potential disruption in earning capacity" from the judgment's levy and "the [d]ebtor's ability to regenerate retirement funds" prior to retirement. (*In re Switzer* (Bankr. C.D.Cal. 1992) 146 B.R. 1, 5.)

Although a trial court is not required to make express findings on each of these factors (e.g., *Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118 [express findings on controverted facts not generally required]) and although an appellate court will generally imply the findings necessary to support the proper exercise of a trial court's discretion (*Acacia Patent Acquisition, LLC v. Superior Court* (2015) 234 Cal.App.4th 1091, 1096-1097), a trial court abuses its discretion when it appears from the record that it "applie[d] the wrong legal standard." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

Here, the trial court applied the wrong standard. The court refused to "weigh or take into consideration what [O'Brien's and his wife's] current wages and salaries are," but those are facts that the case law dictates must be considered in assessing O'Brien's ability to replenish his retirement account prior to his retirement. This error is also not harmless given the evidence that O'Brien is still many years from retirement, is in good health, and has earned a significant salary in the past. (Accord, *In re Montavon* (Bankr. Minn. 1985) 52 B.R. 99, 103 [applying similar factors and not exempting a retirement account under federal bankruptcy law in case involving "a relatively young debtor with good health, substantial earning capacity, and current ability to meet his and his dependents' regular living expenses"].)

We are accordingly compelled to reverse the trial court's ruling declaring the full amount of O'Brien's four retirement accounts to be exempt and to remand for the court to apply all of the relevant factors in deciding what portion of those accounts is necessary for the support of O'Brien and his dependents.  In light of this conclusion, we have no occasion to consider Diagnostics' further arguments that O'Brien did not provide documents to corroborate his monthly household expenses and did not spell out with specificity his likely earnings prior to retirement as well as his financial needs upon retirement.  These issues can be considered by the trial court in the first instance upon remand.

## DISPOSITION

We reverse and remand for further proceedings.  Diagnostics is entitled to costs on appeal.

## <u>CERTIFIED FOR PUBLICATION.</u>

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ