**In re Gordon H. MOFFAT, Debtor.**

**Gordon H. MOFFAT, Appellant,**

v.

**David R. HABBERBUSH, Appellee.**

**BAP No. CC–89–2062–POMe.**

**Bankruptcy No. LA 88–20019–KM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 25, 1990.

Decided Aug. 31, 1990.

Richard M. Moneymaker, Los Angeles, Cal., for appellant.

David R. Haberbush, Los Angeles, Cal., for appellee.

Before PERRIS, OLLASON and MEYERS, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

This appeal concerns the bankruptcy trustee's objection to the debtor's claimed exemption in a $190,000 single premium immediate annuity. The bankruptcy court determined that the subject annuity is a matured annuity and not reasonably necessary to support the debtor and his spouse and therefore was not exempt 107 B.R. 255. The debtor appeals from the order. We affirm.

## FACTS

The debtor, Gordon H. Moffat ("the debtor") is a practicing orthodontist who earns a gross monthly salary of approximately $5,000 and monthly take-home pay of approximately $4,000 from his wholly owned and operated professional corporation. In addition, the debtor receives $1,000—$1,500 a month as a consultant for an insurance company and $800.00 a month in Social Security payments. The debtor's wife receives a gross monthly salary of $600. Although the debtor testified that he was developing glaucoma and had health problems in the past, there is no medical opinion evidence that this, or any other condition, will impair the debtor's practice, nor any testimony that the debtor would be otherwise unable to continue to carry on his practice for the foreseeable future.

On February 5, 1988, the debtor and his spouse created "The Gordon H. Moffat and Barbara B. Moffat Living Trust" ("Living Trust"). The debtor, his spouse and their children are the trust beneficiaries. The debtor transferred title of his personal residence to the Living Trust.

On February 28, 1988, the debtor borrowed $300,000 against his home and utilized $190,000 of the proceeds to purchase a single premium immediate annuity policy

("the annuity" or "the policy").[1] The policy's issue date is June 28, 1988, and its effective date is July 1, 1988. The policy calls for a minimum of 40 quarterly payments of $4,370.00 to commence on October 1, 1988. The debtor, as the designated "owner" and annuitant is entitled to receive these payments for as long as he lives. In the event the debtor dies before receiving the 40 quarterly payments over the 10 year period, the policy's designated beneficiary, the debtor's spouse, will receive the remaining payments.

Subsequently, the debtor transferred his ownership interest in the annuity to the Living Trust. The debtor testified that he and his spouse created the Living Trust and purchased the annuity on the advice of counsel in order to keep his creditors from reaching these assets by maximizing allowable exemptions. Prior to the above transaction, the debtor had a monthly mortgage payment of only $1,600.00. After this transaction, the debtor has a monthly mortgage payment of $2,600.00. The debtor maintains that he needs the $4,370.00 quarterly annuity payment in order to service the debt on his home.

The debtor filed a Chapter 7 petition on September 21, 1988 and claimed as exempt, *inter alia*, the annuity under California Code of Civil Procedure ("C.C.P.") § 704.100. The Chapter 7 Trustee, David Habberbush, ("the trustee") objected to this claimed exemption. Following an evidentiary hearing, the bankruptcy court entered a Memorandum Decision that, *inter alia*, disallowed the debtor's claimed exemption in the annuity. The debtor filed this timely appeal.

## ISSUES

The ultimate issue in this appeal is whether the debtor is entitled to claim an exemption in the annuity under C.C.P. § 704.100. Resolution of this issue requires consideration of two sub-issues:

(1) Whether the annuity had matured prior to the date of the petition; and

(2) Whether the payments received from the annuity are reasonably necessary for the support of the debtor and his spouse.

## STANDARD OF REVIEW

Whether the annuity matured prior to the date of the petition is a legal question. Such a question is subject to *de novo* review. *See In re Lewis*, 79 B.R. 893, 895 (9th Cir. BAP 1987). Whether the annuity is reasonably necessary for the support of the debtor and his spouse is a factual question that we review for clear error. *See* Bankruptcy Rule 8013.

## DISCUSSION

California Code of Civil Procedure, section 704.100 provides, in relevant part, as follows:

(a) Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim.

\*    \*    \*    \*    \*    \*

(c) Benefits from matured life insurance policies (including endowment and annuity policies) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor.

The bankruptcy court determined that the exemption was not available under section 704.100 because the annuity had matured and the payments are not reasonably necessary for the support of debtor and his spouse. The court alternatively concluded that even if the annuity had not matured, the debtor could not claim an exemption in any interest in the annuity because section 704.100(a) exempts only the ownership interest in unmatured annuity policies and the payments which the debtor sought to exempt were part of the beneficial interest.[2] We do not consider the bankruptcy

---

1.  Although the bankruptcy court states that the subject annuity is a single premium deferred annuity, the face of the annuity policy clearly states that it is an immediate annuity.

2.  The court also determined that the debtor was entitled to a $30,000 homestead exemption in his residence and that it would not decide whether the purchase of the annuity was a

court's analysis of the exemption of unmatured annuity policies under section 704.100(a) because the bankruptcy court did not commit reversible error in determining that the annuity at issue matured prior to the date of the petition and that the annuity is not reasonably necessary for the debtor's support.

### 1. Whether the annuity had matured prior to the date of the petition.[3]

■ The debtor contends that the annuity had not matured as of the date of the petition because maturity requires that there be no further conditions to payment and the debtor's continued life was a condition to the payments. The Trustee contends that the annuity had matured because all contingencies prerequisite to payment had occurred prior to the petition. Neither the parties nor the court cite relevant case law dealing with maturity date of an annuity. Our research similarly uncovered no case law. Based upon the fundamental characteristics of annuities, the particular characteristics of the annuity at issue and the plain meaning and application of the term "mature", we believe that the annuity at issue matured prior to the date of the petition.

An annuity contract, in general, is one by which an annuitant makes an investment which will assure his receipt of a specified annual or quarterly sum during his life and if he should die prematurely, his estate or those whom he designates will receive the payments he has not yet received. *See, e.g., Garos v. State Tax Commission*, 99 N.H. 319, 321, 109 A.2d 844, 847 (1954). A

fundamental characteristic of an "annuity" is a periodic payment made unconditionally without any contingency. *In re Luckel's Estate*, 151 C.A.2d 481, 487, 312 P.2d 24, 29–31 (1957).

Annuities are classified upon various bases, including the structure of payments made to the annuitants. *See generally California Insurance Law and Practice* §§ 20.20–20.21 (Matthew Bender 1990) (hereafter "*California Insurance*"). Classification according to the structure of payments made to annuitants depends upon factors such as the events which trigger the discontinuation of payments[4] and, more importantly for purposes of determining maturity, the commencement of the benefits paid to an annuitant. *See California Insurance* § 20.21[2]–[3].

With regard to the commencement of benefits, there are two types of annuities: (1) immediate annuities, in which the payment of benefits begins a short period of time after the premium has been paid to the company, usually at the beginning or end of the first income period; and (2) deferred annuities, in which the payment of benefits begins on some future stated date. *Id.* at § 20.21[3]. As stated in *California Insurance*, § 20.21[3][b], "[d]eferred annuity contracts permit the annuitant to delay the maturity date of the annuity (the date on which payments commence) ..." Although neither *California Insurance* nor other authorities discussed the definition of maturity with respect to annuities, the quoted statement conveys the impression that it is generally accepted that the maturity date of an annuity is the date upon

---

fraudulent conveyance. Neither of these decisions are raised as issues on appeal. Similarly the parties do not raise any issue regarding whether exemption planning, if any, in this case would bar the exemption or preclude the debtor's discharge.

3. The debtor's exemption rights under state law are determined as of the date of the petition. *In re Seyfert*, 97 B.R. 590 (Bankr.S.D.Cal.1989); *see In re Magallanes*, 96 B.R. 253, 255 (9th Cir. BAP 1988).

4. For example, annuities may be either straight life annuities, the payments upon which will terminate upon the death of the annuitant regardless of how long he or she lives, annuities

certain, the payments upon which will terminate at the end of a specified number of years regardless of how long the annuitant lives, or period certain guaranteed minimum annuities, the payment upon which will continue for the longer of a specified number of years or the annuitant's life. *See California Insurance* § 20.21[2]. The annuity at issue is a period certain guaranteed minimum annuity because the insurance company will make payments to the debtor as long as he lives, but if the debtor dies prior to the end of the ten year period, the company will make payments to his wife, the designated beneficiary, for the duration of the ten year period.

which the benefits under the annuity begin to accrue and that an immediate annuity will be mature upon its effective date.

In this case, the annuity at issue is designated on its face as an immediate annuity. This designation is consistent with the annuity's terms because it took effect on July 1, 1988, three days after the issue date and the initial quarterly payment was to be made on October 1, 1988, at the end of the initial quarterly income period. Thus, although the initial payment was not to be made until October 1, 1988, the benefits, as well as the right to payment commenced on July 1, 1988, the beginning of the quarter for which the initial payment was made, and the annuity matured on that date.

This conclusion is also consistent with the plain meaning of "maturity" and similar terms. *Black's Law Dictionary* defines "maturity" as "the date at which ... an obligation becomes due" and defines a "matured claim" as a "[c]laim which is unconditionally due and owing." *Black's Law Dictionary* 883 (5th Ed. 1979). In this case, the company's duty to pay arose on the effective date of the annuity, even though the first payment was not to be made until three months later. Although it was not certain that the payments would be made to the debtor, as opposed to his designated beneficiary if he died within the 10 year period, on the July 1 effective date, there was no pre-condition to the company's obligation to make the payments under the annuity. On that date, the debtor possessed an enforceable right to receive payments, even though the debtor would not receive the first quarterly payment for the July—September, 1988 quarter until October 1, 1988. Given the enforceable right and the absence of conditions to the company's obligation to pay, the annuity matured on July 1, 1988.

The conclusion that the annuity matured on July 1, 1988 is not altered by the debtor's analogy of an annuity to life insurance. Although both annuity policies such as this one and life insurance policies are similar in

that they both involve an element related to the uncertainty regarding the length of the annuitant's or insured's life, in life insurance contracts, the liability of the company will arise upon the death of the insured. *See California Insurance*, § 20.20[2]. This death is a pre-condition to the liability of the company and until the death occurs, the liability of the company will be, at the most, conditional and consequently unmatured. By contrast, the death of the annuitant is not a pre-condition to the company's obligation to pay. Rather, it is an event that will either terminate the obligation to pay or, in this case, transfer that obligation to a different party.

Nor do the debtor's other arguments with respect to maturity alter the above conclusion. The debtor argues that under the definition of maturity adopted above, all life insurance contracts and annuities would be mature on their date of purchase. Although this may be the case as to immediate annuities, this is not the case as to life insurance policies or deferred annuities. As mentioned above, life insurance policies will not mature until the pre-condition of the insured's death has occurred. Deferred annuities will not mature until the future designated date comes to pass. The debtor also relies upon the trustee's purported stipulation that the annuity was not mature on the date of the petition. A review of the record, however, discloses that this stipulation is far from clear.[5]

The debtor's public policy arguments are unpersuasive. In *In re Woodson*, 839 F.2d 610, 618–19 (9th Cir.1988), the Ninth Circuit explained the policy reasons underlying bankruptcy law's distinction between an unmatured policy and a matured policy. While an unmatured policy may have value to the debtor and its loss could cause the debtor to incur replacement costs, an unmatured policy will have no value to the estate other than its loan value, which is not exempt. On the other hand, proceeds from a matured policy have value to the

---

5. The record discloses that immediately after making the statement giving rise to the purported stipulation, the trustee indicated that he dis-

puted that the annuity policy was not matured on the date of the petition. *See* Excerpts of Record at 241.

estate and can be used to pay creditors. The stream of payments arising from the annuity at issue in this case would have value to the estate. Any public policy arguments, therefore, support the conclusion that the policy is matured.

In summary, upon considering fundamental principles of annuity law, the plain meaning of the term "matured" and the public policy concerns, the annuity at issue matured on July 1, 1988, when the right to payment arose in the sense that the benefits began to accrue. Thus, the annuity matured prior to the September 21, 1988 petition.

2. *Whether the payments received from the annuity are reasonably necessary for the support of the debtor and his spouse.*

■ Neither the parties nor the bankruptcy court cite any authority dealing with the interpretation of the term "reasonably necessary for support" under section 704.100(c). Similarly, our research uncovered no authorities dealing with this question. In similar contexts, however, courts have set forth a number of factors to use in determining whether a given asset is reasonably necessary for the debtor's support. *See, e.g., In re McCabe,* 74 B.R. 119, 122 (Bankr.N.D.Iowa 1986). These factors include the following: the debtor's present and anticipated living expenses and income; the age and health of the debtor and his or her dependents; the debtor's ability to work and earn a living; the debtor's training, job skills and education; the debtor's other assets and their liquidity; the debtor's ability to save for retirement; and any special needs of the debtor and his or her dependents. *Id.* In addition, C.C.P. § 703.115 requires that, in determining an exemption based upon the need of the debtor and his spouse and dependents, the

court should take into account the property of the judgment debtor's spouse and dependents.

We do not believe that the bankruptcy court committed clear error in determining that the annuity payments are not reasonably necessary for the support of his debtor and his spouse. There is no contention that the debtor's monthly income of more than $5,000 is not enough to meet expenses,[6] including the debt service payments on the residence. Although the debtor's age and medical condition suggest that this monthly income would not continue into the distant future, there is no indication that the income would not continue at this level, or at least at a level greater than the monthly social security payments, for the next few years. The debtor had a $30,000 interest in his home as another significant exempt asset.[7] In addition, the debtor's spouse had substantial interest in the home through her 48% interest in the Living Trust. Given the debtor's assets income and expenses, we affirm the bankruptcy court's finding regarding the necessity of the annuity for the debtor's support.

## CONCLUSION

We determine (1) that the annuity at issue matured on its effective date, prior to the bankruptcy petition and (2) that the bankruptcy court did not clearly err in finding that the annuity is not necessary for the support of the debtor and his spouse. The annuity, therefore, is not exempt under section 704.100 and we affirm the bankruptcy court's determination.

---

6. Although the bankruptcy court admitted into evidence a statement of the debtor's current income and expenses, that statement was not included in the record on appeal. That factor alone means that we cannot conclude that the bankruptcy court's determination was clearly erroneous. *See In re Burkhart,* 84 B.R. 658, 660 (9th Cir. BAP 1988).

7. The bankruptcy court also cited the debtor's ability to sell his practice in the future. It is doubtful, however, that this asset should be applied to the debtor's support because to the extent the stock in the debtor's professional corporation has any value, it apparently is property of the estate.