87 F.3d 1326
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Thomas D. WILLET, Debtor.
John L. JONES, Appellant,
v.
Thomas D. WILLET, Appellee.
 No. 94-16871.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 14, 1996.*
Decided June 17, 1996.
 
 1
 Before: HALL, BRUNETTI Circuit Judges, and WEINER** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Creditor-Appellant John L. Jones appeals the district court orders affirming the bankruptcy court's judgment in this matter. We affirm.
 
 I.
 
 4
 As a preliminary matter, we deny Jones' motion to remand this matter to the bankruptcy court, and in the alternative, to augment the record with newly discovered evidence.
 
 
 5
 Since filing his appeal, Jones has discovered new evidence suggesting that Willet is no longer retired, but is in fact a First Officer for Southwest Airlines. Pursuant to Crateo, Inc. v. Intermark, Inc., 536 F.2d 862, 869 (9th Cir.), cert. denied, 429 U.S. 896 (1976), Jones submitted a motion to the bankruptcy court requesting an indication that it would entertain a Rule 60(b) motion if it had jurisdiction. The bankruptcy court denied that request and stated that evidence of Willet's newly found employment would not change its determination of the case. Because the bankruptcy court has indicated that it is not inclined to review the case, we deny Jones' motion to remand.
 
 
 6
 We also deny Jones' motion to augment the record on appeal. See Fed.R.App.P. 10(a) (noting that record on appeal is limited to documents and exhibits filed with district court); Sablan v. Dept. of Finance, 856 F.2d 1317, 1327 (9th Cir.1988) (declining to hear issue raised for first time in appeal)
 
 II.
 
 7
 Jones contends that the district court erred in determining that Willet was retired. Specifically, Jones argues that at the time of bankruptcy, Willet was not yet fifty years old and that the standard age of retirement is either 59 1/2 or 65. The former age is when most pensions become due and the latter age is when full social security benefits become available.
 
 
 8
 In finding that Willet was retired, the bankruptcy court noted that an expert witness testified that Willet had retired from Eastern Airlines in December 1989. Furthermore, the bankruptcy court found that Jones had "not provided any evidence controverting the debtor's position that he did retire in December of 1989." The district court affirmed the bankruptcy court finding that the bankruptcy court "correctly focused upon the extenuating circumstances of this case."
 
 
 9
 Similarly, we do not find that the bankruptcy and district courts' findings of fact as to this issue were clearly erroneous. No one standard governs the determination of what age constitutes retirement for the purposes of California Code of Civil Procedure § 704.115, which parties agree applies to this case. Although Jones may have argued that other ages constituted the benchmark retirement age, the court nonetheless found Jones had not provided testimony to back up these contentions.
 
 
 10
 Furthermore, we are not persuaded by Jones' argument that Willet was not retired because he continued to work. At trial, William Piontek, the director of Dean Witter Reynolds pilot retirement funds, testified that Eastern Airlines pilots could retire at age 45 and that when Willet elected to retire, he was over 45. (ER Ex. K at 107). Merely because Willet chose to continue working does not mean that he had not retired from his employment as an airline pilot. As Willet points out, many individuals who elect retirement continue to work during their retirement years.
 
 
 11
 Under the clearly erroneous standard, to reverse we must have a "definite and firm conviction that a mistake has been committed." Sawyer v. Whitley, 112 S.Ct. 2514, 2522 n. 14 (1992). Having reviewed the record, we find we lack this conviction. Accordingly, we hold that the lower courts did not err in determining that Willet was retired from his work as an airline pilot.
 
 III.
 
 12
 Jones also argues that the court misapplied the "reasonably necessary" standard in determining that the entire corpus of the IRA was necessary for Willet's support. Section 704.115 provides that:
 
 
 13
 (b) All amounts held, controlled, or in the process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement, allowance, disability payment or death benefit from a price retirement plan are exempt....
 
 
 14
 (e) ... the amounts described [above] are exempt only to the extent necessary to provide for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires.
 
 
 15
 In interpreting the California statute, the determination of what is "necessary" has been given varied applications. The bankruptcy court and the district court both noted that "two common themes surface in nearly every analysis of 'reasonably necessary' [or necessary]: (1) the debtor's present need for the money, and (2) the ability to rebuild the retirement fund if purged." In re Dalaimo, 88 B.R. 268, 271 (Bankr.S.D.Cal.1988); see also In re Moffat, 119 B.R. 201, 205 (Bankr. 9th Cir.1990) (noting that debtor's present and anticipated living expenses and income; age and health of debtor and dependents; debtor's ability to work and earn a living; debtor's training, job skills and education; debtor's other assets and liquidity; debtor's ability to save for retirement; and any special needs of debtor and dependents are relevant to determination of what is "reasonably necessary").
 
 
 16
 Jones argues that the court erred in (1) calculating Willet's reasonable monthly expenses; (2) finding that Willet's ability to earn a living had been diminished; (3) failing to consider the Social Security income available to Willet when he turns 65; and (4) determining that Willet had a reduced ability to replenish his IRA. We disagree.
 
 
 17
 First, Jones contends that Willet leads a "comparatively luxurious lifestyle" as evidenced by his support of non-dependents including his two adult-age daughters and his wife's parents. At the time of the bankruptcy, Willet estimated his monthly expenses totalled $3,299. Jones argues that the district court should have omitted the support of Willet's family from the calculus thereby freeing up approximately $1,700 of monthly income, a figure which constitutes the share of monthly household expenses that could be paid by Willet's daughters and in-laws.
 
 
 18
 In its findings of fact, however, the bankruptcy court found that other than having his family reside with him, Willet "does not provide monetary support to any of his relatives other than his wife." The district court also noted that Willet's in-laws contribute $300 towards monthly living expenditures and that neither of Willet's daughters received any monetary support from their father. These findings are supported by the record. (ER Exh. K at 30, 62).
 
 
 19
 On appeal, Jones provides no evidence to refute these findings of fact. He merely attempts to reargue the point or more specifically, recalculate Willet's monthly budget. Without additional evidence, we are unpersuaded that the lower courts committed clear error as to this issue.
 
 
 20
 Second, we find that the lower courts did not err in finding that Jones' earning capacity had been diminished. The evidence at trial demonstrated that Willet, who had no college education, was trained as a pilot, but that it was unlikely (though not impossible) that he would obtain future employment in aviation given Willet's age and the depressed state of the airline industry. Willet even testified that he had been unsuccessful in his attempt to find gainful employment in the airline industry. (ER, Exh. K at 54-55). The courts found that although Willet had found a job in the insurance business, his income was just barely sufficient to meet his expenses.
 
 
 21
 Jones argues that it has recently discovered new evidence regarding Willet's employment status. As we noted above, we decline to consider this new information which was brought for the first time on appeal. Our analysis is limited to the record as it was perfected below. Based on that evidence, we find that the lower courts did not err in determining that it was unlikely that Willet would find employment in the airline industry and that his current earnings as an insurance salesman were insufficient to meet his living expenses.
 
 
 22
 Third, Jones argues that the courts failed to consider Willet's Social Security income in determining whether the IRA was exempt. This argument is without merit. We note that the bankruptcy court Judgment of March 4, 1994 and the district court Opinion of September 22, 1994, explicitly state that Social Security income was considered as a factor in determining whether the IRA was reasonably necessary for Willet's support.
 
 
 23
 Jones harps on particular language of the bankruptcy court's order in which the court observes in passing that Social Security benefits may not be available in the near or distant future. Jones argues that the bankruptcy court "improperly substituted its conjecture" for the unchallenged testimony and evidence presented by an expert witness. That witness, Roland Roos, a certified public accountant, testified that based on Willet's past earnings, he could expect Social Security income of $1,623 per month and that if Willet's wife, who was currently not employed, began working outside the home, she could expect Social Security income of approximately $230 per month. (ER Exh. K at 85-86).
 
 
 24
 There is no evidence in the bankruptcy court's order suggesting that it ignored this expert testimony. In fact, the bankruptcy court reviewed the expert's testimony in its order and concluded that it had "consider[ed] the possibility that the Debtor and his wife would receive some social security benefits when they turned age 65." The district court also found that the bankruptcy judge had considered the expert's testimony and correctly observed that the bankruptcy judge was "in the best position to judge the credibility and persuasiveness of the [expert] witness." Although the expert was well-qualified, the district court noted that his testimony did not "ultimately 'establish' any fact in the case." That determination was left to the bankruptcy judge.
 
 
 25
 Reviewing the record below, we do not find that the lower court's failed to include Social Security income in the calculus nor do we find that the bankruptcy court substituted its own conjecture for analysis. Accordingly, we find no error.
 
 
 26
 Fourth and finally, Jones argues that the lower courts erred in determining that Willet was not in a position to replenish the IRA if it were to be purged. The bankruptcy court found that Jones lacked the present ability to replenish the fund: it was unlikely that he would regain employment as an airline pilot and his insurance business had broken even in its first year. The district court also noted that over time, it was unlikely that Willet would be able to replenish the IRA given the fact that his last two business ventures had failed.
 
 
 27
 Jones strenuously argues that the testimony at trial suggested otherwise. He points first to testimony from an expert witness who testified that upon turning 65, Willet would need only half of the IRA's corpus, or $208,000, to cover his living expenses and second, to evidence that Willet had made $26,000 in net income from his insurance venture.
 
 
 28
 The bankruptcy court had the benefit of this evidence and absent clear error, we defer to its findings of fact. If the lower court's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)), cert. denied, 112 S.Ct. 3056 (1992). Having reviewed the record, we find that the lower courts did not commit clear error in this instance and therefore we deny Jones' claim as to this issue.
 
 IV.
 
 29
 Jones argues the bankruptcy court erred in finding that Jones' distributions from his IRA were not taxable and in presuming that the penalties for premature withdrawal from the IRA would result in substantial penalties. However, testimony at trial supported the bankruptcy court's contention that early withdrawal of IRA funds would result in a ten percent penalty plus taxation of the withdrawal, in this case as much as $400,000, at the full income level. Although the bankruptcy court's characterization of Internal Revenue Code § 72(t) as a provision which provides wholly tax-free distributions of the interest and principal from the retirement plan is inaccurate as applied to these facts, we do not find that this error requires reversal or remand.[1]
 
 CONCLUSION
 
 30
 Having carefully reviewed the briefs and the record below, we AFFIRM.
 
 WEINER, District Judge, dissenting:
 
 31
 I must respectfully dissent. Although the court's opinion is well reasoned, I cannot accept the equities of its result.
 
 
 32
 It is undisputed that Willet has "unretired." He is gainfully employed in the same industry from which the Bankruptcy Judge found he had retired. The debtor's action, whether purposefully timed or mere happenstance, of going back to work as an airline pilot after presenting evidence to the Bankruptcy Court that it would be highly unlikely for him to do so, and after the Court's order discharging his debts became final, smacks of improper manipulation. Bankruptcy courts are, above all, courts of equity. Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, rehearing denied 313 U.S. 600, 61 S.Ct. 1107 (1941) (Equity of distribution is the theme of the bankruptcy act.) Denying a judgment creditor access to a substantial asset because the debtor was at that point in time not able to find work in his field seems too narrowly focused.
 
 
 33
 The Bankruptcy Code entitles a debtor to exempt certain property from the bankruptcy estate, either under the Code, or under state law. California statutes exempt "all amounts held ... for the payment of benefits as an annuity, pension, retirement allowance, ..." C.C.P. § 704.115(b). This exemption is limited, however, "to the extent necessary to provide for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support" of the debtor when he retires. C.C.P. § 704.115(e). The Bankruptcy Judge exempted from the estate the debtor's most substantial asset, a $440,000 IRA account, finding that Willet was retired and would not be able to replenish the fund.
 
 
 34
 Other courts have interpreted Section 704.115's "reasonably necessary for support" language. In In re Dalaimo, 88 BR. 268 (Bankr.S.D.Cal.1988), the court looked at two factors: the debtor's present need for the money and his ability to replenish the fund. In In re Moffat, 119 BR. 201 (9th Cir. BAP 1990), the Ninth Circuit Bankruptcy Panel employed the following factors: debtor's present income and expenses, his age and health, ability to work, training and education, other assets, his ability to save for retirement, and any other special needs.
 
 
 35
 Jones argues that the same factors should be employed for IRA accounts and that, under them, Willet is not entitled to the exemption. I would agree. Willet was only 48 at the time of the Bankruptcy Court's order, in good health, and skilled as a pilot and insurance salesman. He is presently employed in his chosen profession. Even if Willet was not working as a pilot, I would still conclude that the Bankruptcy Judge's findings that Willet is retired and that the entire IRA was reasonably necessary for his support are misplaced, considering his age, work history, and education. Accordingly, I respectfully dissent from the court's decision.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Jones also argues that because Willet was a resident of Maryland the court erred in applying California tax law in determining that Willet would incur substantial penalties if he purged the IRA. Jones contends that the correct tax law would be that of the state of Maryland. We agree that it is the law of Maryland, and not California, which applies, but nonetheless do not believe this error requires remand or reversal. As noted in the testimony at trial, federal tax law mandates a ten percent penalty for early withdrawal and a purge of the entire fund would result in the IRA's corpus being taxed at the full income level. We find this penalty in and of itself to be significant and therefore affirm the lower courts' holding. See Wallis v. J.R. Simplot Co., 26 F.3d 885 (9th Cir.1994) (ruling that the appellate court can affirm even if the lower court reached its decision on erroneous grounds)