In re Carol E. DAVIS, Debtor.

Rosendo Gonzalez, Chapter
7 Trustee, Appellant,

v.

Carol E. Davis, Appellee.

BAP No. CC–04–1333–PKMo.
Bankruptcy No. LA 03–15835–EC.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Jan. 20, 2005.

Filed March 31, 2005.

Patrick K. McClellan, Irvine, CA, for Rosendo Gonzalez, Ch. 7 Trustee.

Cheryl Thomas, Santa Ana, CA, for Carol E. Davis.

Before PERRIS, KLEIN and MONTALI, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

In this case, the bankruptcy trustee objected to debtor's claim of exemption under California law in her Keogh and Individual Retirement Account (IRA), arguing that they were not necessary for the support of debtor or her dependents in retirement.[1] Because we conclude that the bankruptcy court clearly erred in finding that the trustee had not met his burden of proving that the exemption was not properly claimed, we REVERSE.

## FACTS

Debtor is an ophthalmologist. In 2002, she and her husband divorced. The dissolution judgment provided for the distribution of various retirement accounts held by debtor and her ex-husband.

When debtor filed her bankruptcy petition in March 2003, she claimed an exemption under California law in all of the retirement accounts, listing their total value at $198,000.[2] The trustee objected to

---

1. Debtor did not claim in the bankruptcy court and does not claim on appeal that the accounts are not property of the estate. Therefore, the only issue before us is whether the accounts are exempt under California law.

2. Debtor's original schedules listed Keogh accounts and IRAs valued at $579,813, all of which debtor claimed exempt. Later, debtor amended her schedules to value the exempt accounts at $198,000. The trustee objects to debtor's claim of exemption in three accounts, which are shown on trial exhibit 3 as "W's IRA," "W's Fidelity Keogh," and "W's Merrill Keogh." That exhibit shows an estimated value of each of the three accounts as of February 29, 2004, as $23,060 for the IRA, $132,422 for the Fidelity Keogh account, and $84,607 for the Merrill Keogh account. The exhibit also lists four other retirement ac-

the claim of exemption in three accounts held solely in debtor's name: two Keogh accounts and one IRA, arguing that the Keogh accounts are not exempt as a matter of law and that none of the accounts are necessary for debtor's support when she retires. The trustee did not object to any exemption that might be claimed in a distribution that debtor is entitled to receive from her ex-husband's retirement accounts pursuant to the dissolution judgment.

After a hearing, the court concluded that the trustee had not met his burden of proving that debtor had not properly claimed her exemptions, and overruled the trustee's objection. The trustee appeals the court's order overruling his objection to the claim of exemption.

## ISSUES [3]

1. Whether the court erred in ruling that debtor's Keogh accounts could be exempt as a matter of law.

2. Whether the court clearly erred in finding that the trustee had not met his burden of proving that the retirement accounts are not necessary for debtor's support in her retirement.

## STANDARD OF REVIEW

■ We review the scope of a statutory exemption de novo, as a question of law. *In re Bloom,* 839 F.2d 1376, 1378 (9th Cir.1988). The court's findings regarding the necessity of retirement accounts for debtor's support are reviewed for clear error. *In re Spenler,* 212 B.R. 625, 628 (9th Cir. BAP 1997). Clear error exists when, after examining the evidence, the

counts, which are held in debtor's ex-husband's name.

3. Appellee uses part of her Statement of Issues to complain that the trustee's second objection to debtor's exemptions was improp-

reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## DISCUSSION

### 1. *Exemption of Keogh accounts*

■ The trustee argued to the bankruptcy court that Keogh accounts are not exempt as a matter of law. The court never specifically addressed this argument, but impliedly rejected it when it overruled the trustee's objection to the claimed exemption. The cases cited by the trustee in support of this argument are all distinguishable.

In *Hebert v. Fliegel,* 813 F.2d 999 (9th Cir.1987), the court concluded that Keogh plans are not exempt under Oregon exemption law, which, at that time, provided for exemption of "pensions granted to any person in recognition by reason of a period of employment by ... [any] person, partnership, association or corporation ...." ORS 23.170 (1985). The court explained that Keogh plans

> are funded exclusively by the self-employed individual, who retains complete control over the amounts invested and the management of the funds. The individual also retains the right to terminate the plan and withdraw the funds at any time, subject only to a tax penalty.

813 F.2d at 1001.

The trustee argues that *Hebert* stands for the proposition that Keogh plans are not exempt as a matter of law, based on the court's "conclusion" that "the benefits to be derived from granting an exemption

er and that the trustee's counsel had a conflict of interest. She does not make any argument about those issues, so we did not address them.

for self-funded plans are outweighed by the 'strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors.'" 813 F.2d at 1001. There are two problems with the trustee's reliance on *Hebert,* and on the quoted portion in particular. First, the court did not "conclude" that policy considerations precluded exemption of Keogh plans; the beginning of the sentence quoted above is, "Moreover, the majority of courts that have addressed the policy issues have concluded that" the benefits of exemption are outweighed by the policy against allowing debtors to put their assets beyond the reach of creditors. *Id.* The court went on to hold that, "[w]hatever the policy considerations, the issue is still governed by the Oregon statute." *Id.* at 1002. Thus, it did not rely on policy considerations at all.

Second, the court's decision was based on the Oregon exemption statute, which did not include self-funded Keogh accounts. Its holding has no application in this case, where the exemption is claimed under a very different California exemption statute.

The other two cases on which the trustee relies are similarly inapplicable. In *In re Shuman,* 78 B.R. 254, 256 (9th Cir. BAP 1987), we held that a debtor's interest in profit-sharing and pension plans was included in the debtor's bankruptcy estate because, under Nevada law, the plans were not valid spendthrift trusts and therefore were not exempt under state law. The issue in this case is neither whether debtor's Keogh accounts are exempt under Ne-

vada law, nor whether they are property of her bankruptcy estate.

The question in the portion of the decision in *Schwartzman v. Wilshinsky,* 50 Cal.App.4th 619, 57 Cal.Rptr.2d 790 (Cal. Ct.App.1996), to which the trustee refers was whether the appellant's 401(k) plan was "designed and used for retirement purposes" pursuant to Cal.Code Civ. Pro. § 704.115. There is no argument in this case that debtor's Keogh accounts are exempt under California law only if they were "designed and used for retirement purposes." The only factual issue in this case, as explained below, is whether the amounts held in debtor's retirement accounts are necessary to provide for her support after she retires. Thus, *Schwartzman* does not support the trustee's argument that the Keogh accounts are nonexempt as a matter of law.

The bankruptcy court did not err in implicitly rejecting the trustee's argument that Keogh accounts cannot be exempt as a matter of law.

### 2. *Amounts necessary for the support of debtor in retirement*

Debtor claims that the retirement accounts are exempt under Cal.Code Civ. Pro. § 704.115(b). That section exempts amounts held in self-employed retirement plans and IRAs, but "only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires." Cal.Code Civ. Pro. § 704.115(e).[4] In determining

4.  In her schedules, debtor claimed the exemption under Cal.Code Civ. Pro. § 703.140(b)(10)(E). However, both she and the trustee have argued about whether the

exemption is proper under Cal.Code Civ. Pro. § 704.115(b), so that is the statute we will apply. Both provisions limit the exemption to the amount necessary for the support of the

whether the amounts held in the accounts are necessary for debtor's support when she retires, the court should consider various factors, including:

the debtor's present and anticipated living expenses and income; the age and health of the debtor and his or her dependents; the debtor's ability to work and earn a living; the debtor's training, job skills and education; the debtor's other assets and their liquidity; the debtor's ability to save for retirement; and any special needs of the debtor and his or her dependents.

*In re Moffat,* 119 B.R. 201, 206 (9th Cir. BAP 1990), *aff'd,* 959 F.2d 740 (9th Cir.1992)(addressing whether annuity was exempt under statute that exempted matured life insurance policies "to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor." 119 B.R. at 203).

Once the debtor claims an exemption on her bankruptcy schedules, "the objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr.P. 4003(c). Thus, in this case, the trustee had the burden to show that debtor had not properly claimed the exemption in her Keogh and IRAs.[5]

The trustee provided the declaration and testimony of Donald Fife, an accountant, who provided an analysis of debtor's income and expenses during debtor's projected work life and retirement. He concluded that debtor needed $123,308 in current retirement funds in order to support her in retirement, which would leave a $100,000 cushion at the end of debtor's life expectancy. His opinion took into account various facts and assumptions.

At the time of the hearing, debtor was 51 years old. She was a practicing ophthalmologist. Fife assumed that debtor could work through the age of 65, and projected debtor's income from her practice over the 15 remaining years of debtor's work life at $8,435 per month, which was based on debtor's bankruptcy schedules and 2002 tax return. From that amount, he deducted $3,414 in business expenses, a number he took from debtor's bankruptcy schedules. This resulted in annual projected income net of business expenses of $60,252 during debtor's working life. To this he added $2,400 for rental income that debtor also reported on her bankruptcy schedules, for a total annual income of $62,652.

From this amount, Fife deducted certain expenses. He arrived at the expenses by looking at debtor's bankruptcy schedules and then adjusting them based on Bureau of Labor statistics used by the Internal Revenue Service in considering offers of compromise. Fife eliminated debtor's expenses for insurance and transportation,

debtor, which is the factual issue raised in this appeal.

The trustee does not make the argument that is pending before the United States Supreme Court, that IRAs are not exempt as a matter of law under Bankruptcy Code § 522(d)(10)(E), which is comparable to Cal. Code Civ. Pro. § 703.140(b)(10)(E). *See In re Rousey,* 347 F.3d 689 (8th Cir.2003), *cert. granted,* 541 U.S. 1085, 124 S.Ct. 2817, 159 L.Ed.2d 246 (2004) (No. 03–1407)(argued December 1, 2004).

5. We express no view about the issue addressed in Judge Klein's concurrence, because it is neither presented in nor dispositive of this appeal. We do note, however, that the Supreme Court in *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), made clear that burdens of proof could be established by the Bankruptcy Rules as well as by the Bankruptcy Code: "The legislative history indicates that the burden of proof on the issue of establishing claims was left to the Rules of Bankruptcy Procedure." *Id.* at 22 n. 2, 120 S.Ct. 1951.

based on his understanding that those expenses were being paid as business expenses. He also reduced the amount claimed for electricity from $200 per month to $100, food from $900 per month to $500, clothing from $300 to $100, laundry/dry cleaning from $100 to $50, and medical and dental from $1,040 to $100. He eliminated debtor's $1,500 child support expense, based on his understanding that debtor was no longer paying support. He also added in a $100 contingency.

For debtor's retirement years and through her life expectancy, Fife eliminated income from work and calculated a projected amount of $1,550 for social security income. Because debtor could no longer deduct her automobile or insurance as a business expense once she retired, he also included those as individual expenses in retirement.

Based on those calculations, Fife concluded that debtor currently needed $123,308 in retirement funds to support her in her retirement. This amount took into account a projection of 7 percent earnings on retirement funds, and the addition to the retirement account each year of the amount of income in excess of expenses.

Debtor testified that she continues to have a $1,200 per month child support obligation that she pays to her ex-husband for their 13–year–old daughter. She also testified that the dissolution judgment from her divorce entitles her to one-half of the community property retirement accounts that the couple had during the marriage. At the time of dissolution, the spouses had five retirement accounts, some held in debtor's name and some in the name of her ex-husband. The dissolution judgment provides that each spouse will retain the accounts held in their own name, and that an equalizing division will be made from debtor's ex-husband's AMGR account. According to the list of property used in the dissolution action, as of May 16, 2002, the parties' retirement accounts were valued as follows:

| | |
|---|---|
| AMGR Money Savings Plan | $727,484 |
| Fidelity IRA (husband) | 14,181 |
| Fidelity IRA (wife) | 20,939 |
| Fidelity Keogh | 112,156 |
| Fidelity USC 401 and 403 | 48,966 |

Those accounts totaled $923,726, to which debtor was entitled to half.

The retirement accounts had not been divided at the date of the trial, and debtor testified that she did not know how much her distribution would be. She estimated that she would receive $200,000, based on her understanding that her ex-husband had approximately $500,000 in his retirement account at the time of separation. She acknowledged that, if his retirement account was larger than that, she would be entitled to more.

Debtor was also questioned about a document that showed the estimated value of the couple's total retirement assets at $1,095,151, which debtor testified she thought was approximately correct with regard to the amount in her accounts and she hoped was accurate as to her ex-husband's accounts. Debtor acknowledged that, if that amount is accurate, she had no reason to doubt that she would be entitled to $307,000 as her equalizing distribution.

Fife's projections of the amount needed to support debtor in her retirement did not take into account either the child support debtor is obligated to pay or the fact that she is entitled to a substantial sum in an equalizing distribution from the dissolution of her marriage. Fife testified that, assuming debtor was obligated to pay $1,500 per month in child support (based on outdated information; debtor testified that she was currently obligated to pay $1,200 per month) and that she received a lump sum distribution of retirement funds from the dissolution of $307,000, debtor would

have $470,000 left over in retirement funds at the end of her life expectancy. Based on that fact, Fife opined that debtor would not need the IRA and Keogh accounts that she sought to exempt in the bankruptcy case.

The bankruptcy court rejected Fife's analysis as "seriously flawed," Transcript of May 21, 2004 hearing at 8:25—9:1, and concluded that the trustee had failed to meet his burden of proof. The court noted five "faulty assumptions" in Fife's report, which caused the court to view the income and expense projections as "significantly flawed." Id. at 5:16–17; 7:25—8:1.

First, the court noted that Fife erroneously understood that debtor owned and operated her own ophthalmology practice. In fact, the practice had been sold and debtor was working as an independent contractor for other ophthalmologists.

This assumption did not affect Fife's analysis of debtor's income or expenses, nor was is used to project what debtor might need for her support on retirement. In his declaration, Fife explained that he calculated debtor's monthly income based on what debtor listed on her bankruptcy schedules, which was from her independent contractor work, and from her 2002 corporate tax returns, which reflected income of debtor's corporation.[6]

Second, the court pointed out that Fife had said that he had not allowed for the eventual sale of debtor's business and that any proceeds received from such a sale could be used to fund debtor's retirement. As the court recognized, the business had already been sold and there were no remaining proceeds.

Because Fife did not depend on any projected proceeds from the sale of debtor's business, nor rely on her ownership of a business in projecting her income, this faulty assumption could not have affected his analysis.

Third, the court noted that Fife failed to include debtor's child support obligation, based on faulty information that debtor's children were over 18 years old. As the court noted, one daughter was 19 years old, living with debtor, and debtor was paying $1,200 per month child support for a 13–year–old daughter who lived with her father.

Although Fife did not include child support in his written projections, he did testify that, if debtor was obligated to pay $1,500 per month for five years, and assuming that she received a lump sum distribution of a retirement fund under the dissolution judgment, debtor would have sufficient funds necessary to support herself in retirement. There was no evidence contradicting that conclusion.

Fourth, the court questioned Fife's use of a website called "salary.com" to find that the median expected income of an ophthalmologist in Los Angeles is $210,416. The court found it unclear whether those numbers took into account ophthalmologists who were working as independent contractors.

Although the court's criticism of the basis for the median income is reasonable, it did not impact Fife's analysis. Fife did not attribute to debtor the median income of ophthalmologists in Los Angeles; he used her actual income, earned working less than full-time. He did mention the median income in explaining why he did not adjust the income and expense numbers for inflation over time; he testified that, based on the median income for ophthalmologists in the area, he assumed that debtor's income would increase more

6. Debtor testified that she sold her business in 2001.

than the rate of inflation.[7] That assumption does not make the entire projection faulty. Fife presumably could have adjusted both income and expense for inflation, coming to the same result.

Finally, the court questioned Fife's reductions in debtor's claimed expenses, reducing the food expense from $900 to $500 per month, clothing from $300 to $100, and laundry $100 to $50. The court concluded that Fife was unaware that debtor's older daughter was living with and still dependent on debtor, and therefore found the reductions not reasonable. Notably, the court did not question Fife's exclusion of certain expenses, including insurance and transportation costs, based on his understanding that those expenses were being deducted as business expenses.[8]

Debtor testified that her 19–year–old daughter was dependent on her for room and board as well as school expenses and psychotherapy.[9] Thus, if Fife's reductions in certain expenses were based on the fact that debtor was supporting herself only, the reductions were improper. However, those additional expenses relating to the 19–year–old daughter will last only a few more years, at the most. There is no evidence that debtor will need to support her daughter 16 years from now when debtor retires.

The bankruptcy court also concluded that the trustee had failed to provide evidence of other factors that are to be considered in determining whether retirement funds are necessary for the debtor's support in retirement, such as the health of debtor and her dependents, debtor's other assets and their liquidity, debtor's ability to save for retirement, and any special needs of debtor and her dependents.

■ The factors set out in *Moffat* are factors the court should consider; there is no requirement that the trustee provide evidence of each one, if there is other evidence from which it can be determined that the retirement funds at issue are not necessary for debtor's support upon retirement. In this case, there was uncontroverted testimony that debtor is entitled to a lump sum distribution of retirement funds pursuant to her dissolution judgment in addition to the accounts at issue in this appeal, which she expects to be at least $200,000 and could be as much as $307,000. The testimony was uncontroverted that debtor was working nearly three days per week at the time of the trial, and hoped to be able to do better after the bankruptcy case was concluded. There was no evidence that her health in any way interfered with her ability to work or that she was not physically capable of working

7. The trustee correctly points out that debtor is currently earning $100 per hour. If she were to work 40 hours a week, 50 weeks in a year, her income would be $200,000, very close to the $210,416 median used by Fife.

8. Fife looked at debtor's Schedule J, which showed current business expenses totaling $3,414.00 per month. At the time debtor filed bankruptcy, she no longer owned a business, yet she continued to claim $3,414.00 as business expenses. According to Fife's testimony, debtor's corporation had deducted auto expenses in 2002. Debtor never disputed Fife's assumption that the transportation and insurance costs continued to be included

in her reported business expenses even after the corporation was sold.

Nor did the court or debtor challenge Fife's reduction of debtor's reported medical and dental expenses from $1,040 per month to $100 per month, based on Fife's application of the Bureau of Labor statistics. There was no evidence that this reduction was improper.

9. The trustee argues that Fife was correct that debtor's daughter did not live with her, pointing out that debtor's 13–year–old lived with her father. The trustee ignores the evidence that debtor's 19–year–old daughter was dependent on her and caused debtor to incur expenses for her support.

full-time. Where a debtor is working and there is no evidence about the debtor's health, it can be inferred that the debtor's health is not an impediment to future productive work.

The lack of evidence about debtor's other assets, their liquidity, and her ability to save for retirement is not critical in this case, where it is known that debtor will have at least $200,000 in retirement funds available to her pursuant to the dissolution judgment in addition to amounts in the disputed accounts. If she has sufficient funds in a retirement account now, there is no need to be concerned about whether she has other liquid assets that can be used for retirement or whether she can save for retirement.

Fife testified that debtor needed to have approximately $123,000 in current retirement funds in order to provide for her support in retirement. Even taking into account the additional five years of child support that debtor has to pay, and the fact that she is currently providing some support for her 19–year–old daughter, it is unreasonable to conclude that those additional obligations would increase debtor's need for current funds beyond the $200,000 that she admits she will receive.

The bankruptcy court did not mention at all the undisputed evidence that debtor will have a substantial exempt retirement fund to provide for her on retirement. Given the undisputed evidence about the value of that fund, as well as the fact that the errors in Fife's analysis that the court mentioned do not undermine his ultimate conclusion, we are left with a definite and firm conviction that the court erred in finding that the trustee had failed to meet

his burden of proving that the exemption was not properly claimed.

We realize that the reviewing court's role is limited when reviewing findings of fact; great deference is given to the trial court, and the clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In this case, however, the bankruptcy court ignored the uncontroverted evidence that debtor would have a substantial exempt retirement fund available to her, even without the funds held in the IRA and Keogh accounts. Even without requiring her to maximize her income by working full time, the evidence was that the distribution from her ex-husband's retirement funds under the dissolution judgment would be sufficient to supply her needs in retirement. Therefore, the court clearly erred in overruling the objection to debtor's claim of exemption.[10]

### CONCLUSION

The bankruptcy court clearly erred in finding that the trustee failed to meet his burden of proving that debtor's IRA and Keogh accounts are not necessary for her support when she retires. Therefore, we REVERSE.

KLEIN, Bankruptcy Judge, concurring.

I agree with the majority that the trustee proved the debtor was not entitled to the California exemption in question and write separately to note that we may be holding the trustee to a higher burden than necessary.

---

**10.** After the court overruled the trustee's objection to debtor's claim of exemptions, debtor was denied a discharge (Adv. No. 03–01856). The appeal of the discharge denial was dismissed on December 6, 2004. BAP No. CC–04–1430. Neither party argues that the denial of discharge should affect the analysis of the trustee's objection.

There is reason to doubt the validity of the allocation, in Federal Rule of Bankruptcy Procedure 4003(c), of the burden of proof to the party objecting to a claim of exemption, especially an exemption claimed under state law.

At least with respect to state-law exemptions, the better view, after the Supreme Court's decision in *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), may be that, if challenged, the debtor has the burden to establish entitlement to a claim of exemption under state law by the same standard that applies in the courts of that state. If so, then the objecting party does not properly bear the burden of proof.

This post-*Raleigh* view necessarily calls into question the validity of Rule 4003(c), which expressly allocates the burden of proof on claims of exemption: "the objecting party has the burden of proving that the exemptions are not properly claimed." [11]

The basic problem is that Rule 4003(c) suffers from being a procedural rule that attempts to accomplish a substantive task, it being settled by *Raleigh* that a burden of proof in bankruptcy is substantive and generally is regarded as an essential element of a claim itself. *Raleigh*, 530 U.S. at 20–21, 120 S.Ct. 1951.

This problem has multiple dimensions that may lead to differing results as between exemptions based on nonbankruptcy law and exemptions based on the Bankruptcy Code. It is even possible that the allocation of burden in Rule 4003(c) is valid with respect to federal bankruptcy exemptions but not, as in this appeal, with respect to state exemptions.

The state-law exemptions that apply by way of § 522(b) are probably subject to the burdens of proof that are prescribed under state law.[12] Since *Raleigh* teaches that the burden of proof is substantive, it follows that state law provides the rule of decision regarding the burden on each state exemption. States (either through legislation or decisional law) ordinarily require the proponent of an exemption to bear the burden of proof, the precise quantum of proof varying state-by-state and, sometimes, exemption-by-exemption. *E.g.*, *In re Barnes* 275 B.R. 889, 898–99 n. 2 (Bankr.E.D.Cal.2002) (California law).

The analysis of federal bankruptcy exemptions is different. Congress did not specify a burden of proof for the exemptions that it created in Bankruptcy Code § 522(d). Nor, in contrast to § 502, did Congress say in legislative history that the burden of proof was being left to the rules of procedure.[13] Nevertheless, if one ac-

---

**11.** The rule provides:

> (c) Burden of Proof. In an hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

Fed. R. Bankr.P. 4003(c).

**12.** Putting a finer point on the pencil, this analysis also applies to exemptions created by federal nonbankruptcy law. Thus, a debtor claiming $600 per month exempt as a Medal of Honor pension will, if questioned, be obliged to produce a copy of the certificate showing they are on the Army, Navy, Air Force, and Coast Guard Medal of Honor Roll. 38 U.S.C. §§ 1560–62 (2000).

**13.** The House and Senate committee reports on the enactment of the Bankruptcy Code each state:

> The burden of proof on the issue of allowance [of claims] is left to the Rules of Bankruptcy Procedure. Under the current Chapter XIII Rules, a creditor is required to prove that his claim is free from usury, Rule 13–301. It is expected that the Rules will make similar provision for both liquidation and individual repayment plan cases.

S. Rep. No. 95–989, at 62 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5848;

cepts that there was a clean slate, a rule could plausibly operate to fill a substantive gap in a manner that would make Rule 4003(c) an effective allocation of burden of proof for purposes of the § 522(d) exemptions.

The difficulty with the view that Rule 4003(c) may play a valid gap-filling role for federal bankruptcy exemptions is that the slate was not clean in 1983. The rule indirectly, and without either necessity or explanation, inverted the burden of proof from settled practice under the Bankruptcy Act of 1898, as reflected by Bankruptcy Rule 403(c) and the case law on which it was based.[14]

Former Bankruptcy Rule 403(c) functioned in a regime in which the trustee was required to make a report to the court specifying the claimed exemptions that were not allowable.[15] The "bankrupt" (now, "debtor") or any creditor could object to the report. Bankr.Rule 403(c). The trustee's report was "deemed approved" if there were no timely objections. Bankr.Rule 403(e). If there was an objection to the trustee's report, the burden of

---

H.R.Rep. No. 95–595, at 352 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6308. No rules regarding burden of proof for allowance of claims were subsequently adopted. *Raleigh*, 530 U.S. at 22, n. 2, 120 S.Ct. 1951.

**14.** Congress authorized the former Bankruptcy Rules that were promulgated between 1973 and 1976 to fill substantive gaps because the version of 28 U.S.C. § 2075 in effect from 1964 to 1979 directed that all laws in conflict with bankruptcy rules be of no further force or effect after such rules have taken effect, so long as they did not abridge, enlarge, or modify a substantive right. 28 U.S.C. § 2075 (repealed 1979). As noted later in this concurrence, Rule 403(c) merely restated settled decisional law.

**15.** Bankruptcy Rule 403 provided, in relevant parts:

(a) *Claim of Exemptions.*—A bankrupt shall claim his exemptions in the schedule of his property required to be filed by Rule 108.

(b) *Trustee's Report.*—The trustee shall examine the bankrupt's claim for exemptions, set apart such as are lawfully claimed, and allowable, and report to the court the items set apart, the amount or estimated value of each, and the exemptions claimed that are not allowable. The report shall be filed with the court no later than 15 days after the trustee qualifies. If the trustee reports that any exemption claimed is not allowable, he shall forthwith mail or deliver copies of the report to the bankrupt and his attorney.

(c) *Objections to Report.*—Any creditor or the bankrupt may file objections to the report within 15 days after its filing, unless further time is granted by the court within such 15–day period. Copies of the objections so filed shall be delivered or mailed to the trustee and, if the objections are by a creditor, to the bankrupt and his attorney. After hearing upon notice the court shall determine the issues presented by the objections. The burden of proof shall be on the objector.

(d) *Procedure If No Trustee Qualified.*—If no trustee has qualified, the bankruptcy judge shall file the report prescribed by subdivision (b) of this rule within 15 days after the first date set for the first meeting of creditors. If the bankrupt files objections to the report, the court shall appoint a trustee or receiver, who shall represent the estate in the hearing on the objections.

(e) *Approval of Report If No Objections.*— If no objections are filed within the time provided by this rule, the report shall be deemed approved by the court. On request, the court may, at any time and without reopening the case, enter an order approving the report.

(f) *Claim of Exemption by Person Other Than Bankrupt.*—If the bankrupt fails to claim the exemptions to which he is entitled, or if he dies before his exemptions have been set apart to him, his spouse, dependent children, or any other persons who are entitled to claim the exemptions allowable to the bankrupt may, within such time as the court may order, file a claim for his exemptions or object to the report.
Bankr.Rule 403 (repealed 1983).

proof was on the objector. Bankr.Rule 403(c).

The Bankruptcy Code made significant structural changes in the exemption process. The biggest difference was elimination of the requirement of the trustee's report, which had the consequence of causing the debtor and the trustee to exchange roles. The identity of the objector in an exemption context shifted from debtor to trustee.

Under the former regime, the debtor's claim of exemptions had to pass through the filter of the trustee's report. Claimed exemptions were treated as presumptively valid only to the extent the trustee agreed and did not propose to reject the exemption in the required report; if the trustee did not agree with the debtor, then it was incumbent on the debtor to object to the report and prove entitlement to the exemption.

Under the current regime, the debtor's claim of exemptions is treated as presumptively valid; if the trustee does not agree, it is incumbent on the trustee to object. 11 U.S.C. § 522(*l* ); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642–43, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

None of the changes wrought by the Bankruptcy Code, however, necessitated any adjustment in the settled burden of proof. Nor was there any mention in the legislative history of § 522 regarding the burden of proof in a fashion that would suggest that any change was contemplated.

Moreover, the general transition rule is that settled judge-made rules established under the Bankruptcy Act were not silently abrogated unless inconsistent with the new Bankruptcy Code. *See, e.g., Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). This rule of construction was not undermined by *Raleigh,* which rejected an appeal to pre-Code practice because the Court concluded that the pre-Code cases were contradictory, inconsistent, and anything but settled. *Raleigh,* 530 U.S. at 22–23, 120 S.Ct. 1951.

The settled judge-made rule under the Bankruptcy Act was that the debtor had the burden of proof on exemption issues. The Advisory Committee Note to the 1973 adoption of Bankruptcy Rule 403(c) explained that the rule was essentially restating judge-made law regarding the burden of proof on exemptions: "the case law has generally placed the burden of proof on the bankrupt whenever there is an issue raised as to his right to an exemption claimed."[16]

The settled pre-Code law placing the burden of proof on the debtor (and other objectors) was an allocation that comported with general nonbankruptcy law by requiring the objecting debtor to prove enti-

---

**16.** The Advisory Committee explained, in relevant part:

> *Subdivision (c)* of the rule is an elaboration of the last clause of General Order 17(2).... The allocation of the burden of proof made by the last sentence of subdivision (c) rests on the assumption that the trustee has performed the duties imposed on him by subdivision (b) [trustee's report of exemptions] with due regard to the rights of the bankrupt as well as the creditors whom he represents. Although the assumption might be questioned by the bankrupt, the case law has generally placed the

burden of proof on the bankrupt whenever there is an issue raised as to his right to an exemption claimed. *In re Dederick,* 91 F.2d 646, 650 (10th Cir.1937); *In re Campbell,* 124 F. 417, 421–22 (W.D.Va.1903); *In re Stinemetz,* 38 Am.B.R.(N.S.) 544, 547 (Ref., D.Kans.1938); 1 Collier ¶ 6.23 (1960)....

Bankr.Rule 403(c), Advisory Comm. Note (repealed 1983).

General Order 17(2) provided for objections to the trustee's report of exemptions but was silent about the burden of proof. Gen. Order in Bankr.17(2), 305 U.S. 688 (1939).

tlement. Under nonbankruptcy law, the person claiming property as exempt from judgment enforcement generally has the burden to demonstrate that the exemption is warranted.

The Advisory Committee Note to the adoption of Rule 4003(c) in 1983 explained that the rule was derived from § 522(*l*) and from former Bankruptcy Rule 403.[17] Although the new Rule 4003(c) replicated the portion of Rule 403(c) that allocated the burden of proof to objectors, the Advisory Committee Note did not point out that this would operate to invert the burden of proof established under prior law and would do so in a fashion that would no longer be in harmony with nonbankruptcy law. The representation in that note that the "Code changes the thrust of that rule [403(c)] by making it the burden of the debtor to list and the burden of parties in interest to object" appears to be a reference to the procedural burden of going forward, rather than a reference to the substantive burden of proof.

There are, thus, two ultimate questions regarding Rule 4003(c): first, whether any rule of procedure can permissibly require that exemptions based on nonbankruptcy law be subject to a burden of proof different than nonbankruptcy law; and, second, whether this particular rule validly altered the burden of proof that had been settled in eight decades of practice under the Bankruptcy Act.

The answer to the first question was suggested by the Supreme Court in *Raleigh* when it rejected the proposition that the allocation of burdens of proof in tax matters should be different in bankruptcy. One could credibly argue that there is no reason to think that the same analysis would lead to a different conclusion with respect to exemptions under nonbankruptcy law, particularly since that was the state of the pre-Code law.

The answer to the second question is suggested by the Supreme Court's approach, in cases such as *Kelly*, perpetuating settled pre-Code judge-made doctrine that is not inconsistent with the Bankruptcy Code and was not otherwise rejected by Congress.

Nor are these questions more theoretical than real. A majority of states have exercised their statutory power under § 522(b)(1) to "opt out" of the "federal exemptions" in § 522(d). 14 COLLIER ON BANKRUPTCY (ALAN N. RESNICK & HENRY J. SOMMER, eds.), Exemptions ¶ Intro.[3] (15th ed. rev.2004). And, in every state, a debtor may elect to take exemptions based on state law in lieu of the exemptions created by § 522(d). Thus, the state-law burden of proof is potentially significant.

As noted, the automatic allowance of exemptions to which there is no objection that appears in Bankruptcy Code § 522(*l*) does not change this analysis.[18] That sub-

---

17. Note that § 522(*l*) was, itself, derived in substantial part from Rule 403. The explanation was:

This rule is derived from § 522(*l*) of the Code and, in part, former Bankruptcy Rule 403. The Code changes the thrust of that rule by making it the burden of the debtor to list his exemptions and the burden of parties in interest to raise objections in the absence of which "the property claimed as exempt on such list is exempt;" § 522(*l*).

Fed. R. Bankr.P. 4003(c), Advisory Comm. Note (1983).

18. The statute provides:

(1) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claims as exempt on such list is exempt.

11 U.S.C. § 522(*l*).

section, which was plainly modeled on Bankruptcy Rule 403(e), does not specify a burden of proof. Insofar as it implicates burdens, § 522(*1*) deals with the procedural burden of going forward, rather than the burden of proof. It arguably also operates to create an evidentiary presumption that a mere claim of exemption is valid, which presumption is rebutted by making an objection. If rebutted, then the usually-applicable burden of proof applies.

The present appeal does not require us to resolve the extent of the validity of Rule 4003(c) because we are unanimous that, under all plausible views regarding the burden of proof, the evidence of record does not support the claimed exemption. We agree that, assuming that the trustee had the burden of proof, the trustee carried that burden. It follows that the evidence also would not be sufficient to support an exemption if the debtor were to have had the burden of proof. The assertion in the majority opinion that the burden of proof is on the trustee should be regarded as nonbinding dictum because it is not necessary to the decision.

In another case, however, the allocation of the burden of proof could be crucial. I CONCUR.